**Judy TERRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45614.**

Court of Criminal Appeals of Texas.

Jan. 24, 1973.

Rehearing Denied March 21, 1973.

Douglas Tinker, Corpus Christi, for appellant.

William B. Mobley, Jr., Dist. Atty., Phillip Westergren and Irma Rangel, Asst. Dist. Attys., Corpus Christi, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

The jury in this cause found appellant guilty of the offense of murder without malice; the court assessed punishment at five years and this appeal is taken from the conviction.

The evidence shows that the victim of this homicide was the infant son (approximately one month and three days old) of the appellant and her husband.

Appellant complains of the admission in evidence of eight color pictures.

Recently, in Martin v. State, Tex.Cr. App., 475 S.W.2d 265, we discussed the admissibility of pictures in evidence and the holding therein is controlling. We will further elaborate and then determine if the pictures are admissible in the instant case.

■ Photographs are admissible in evidence on the theory that they are pictorial communications of a witness who uses them instead of, or in addition to, some other method of communication. Thus, they are admissible on the same grounds and for the same purposes as are diagrams, maps, and drawings of objects or places, and the same rules of admissibility applicable to objects connected with the crime apply to photographs of such objects. This is true whether they are originals or copies, black and white or colored. So, a photograph, proved to be a true representation of the person, place, or thing which it purports to represent, is competent evidence of those things of which it is material and relevant for a witness to give a verbal description.

■ And, we again point out, as we did in Martin v. State, supra, and Lanham v. State, Tex.Cr.App., 474 S.W.2d 197, that the admission in evidence of photographs must necessarily rest largely in the discretion of the trial judge, who determines whether they serve a proper purpose in the jury's enlightenment, and his action will not be disturbed in the absence of a showing of an abuse of discretion.

Now, to the case at bar. Eight color slides were introduced and shown on a screen so the jury could view them. The first three (State's Exhibits 2, 3, and 4) show the nude body of the child depicting many bruises; the next (State's Exhibit 5) is an X-ray showing a broken bone in an arm; the remaining four (State's Exhibits 6, 7, 8, and 9) show areas of the body after an autopsy had been performed.

■ The first three pictures, though gruesome, are admissible as they corroborate the verbal description and bring visibly to the jury the details of the crime by showing the location, nature and extent of the wounds or injuries to the body of the deceased child. Their probative value far outweighs any probable prejudicial effect on the jury. This is especially true since the appellant testified to a single, unintentional act of dropping the child and the pictures show what the jury could reasonably conclude to have been a continual assault.

■ The X-ray showing the broken arm is admissible. It bears on the degree of the atrociousness of the crime. Such proves a relative issue and enables the jury to better understand the testimony.

■ Now, we come to the pictures of parts of the body after an autopsy had been performed. State's Exhibit No. 6 shows an incision which exposes the upper interior part of the chest. State's Exhibit No. 7 shows, as described by the expert witness, " . . . the left shoulder, and . . . the flap cut from the chest down the arm . . . to expose the fractured bone." The witness described State's Exhibit No. 8 as, " . . . the head. The bones of a child are not hard; they are almost rubbery, and to open the head, you reflect the scalp, and you can bend the bones back from the top of the brain. This shows the top of the brain, . . . " State's Exhibit No. 9 shows, " . . . a fracture of the bone in this skull bone, a picture taken of the actual fracture in the skull . . .."

It is apparent from these exhibits that one sees primarily what was done by the person who performed the autopsy rather than that alleged to have been done by appellant. An example is evident from the following explanation of State's Exhibit No. 8:

"Q. And does that reflect that the vessels all along there were torn or

. . .

A. No, it does not. This is one of the problems with dating this type of

injury, because if one vessels breaks and bleeds for 12 hours, it would probably cause as much injury as if more vessels were broken, so I can't begin to count how many vessels, because when I remove the skull, I am tearing others, so that the number of vessels determine how fast this bleeding will occur and how fast death will occur. This is why you are faced with the problem that we can't say it occurred 60 minutes after the injury, but we have to date it to minutes to hours.

. . . . . .

Q. But you don't know which vessels were torn, and that was too small, and you did some damage when you took the scalp apart?

A. That's correct."

With this in mind, we must determine if the probative value of these exhibits is sufficient to outweigh their inflammatory aspects, for as in Martin v. State, supra, 475 S.W.2d at page 268, we stated:

"We recognize there will be cases where the probative value of the photographs is very slight and the inflammatory aspects great; in such cases it would be an abuse of discretion to admit the same."

What is shown in these pictures is massive mutilation of the subject matter caused by the surgery in performing the autopsy. The jury, in the absence of the explanation of isolated areas pointed out by the expert witness, sees only severed parts of a human body.

The bruises and injuries to the child had already been shown by verbal descriptions and State's Exhibits 2 through 5. After this was done, what material and relevant issues were necessary to be shown by these photographs taken after an autopsy had been performed? They are, at most, only remotely connected with the crime.

We conclude that the autopsy pictures clearly served to inflame the minds of the jury, and the trial court abused its discretion by not sustaining appellant's objections to their admission.

The judgment is reversed and the cause remanded.