Rogelio Castro IZAGUIRRE a/k/a
Domingo Lopez Ochoa, Appellant,

v.

STATE of Texas, Appellee.

No. 13–84–266–CR.

Court of Appeals of Texas,
Corpus Christi.

May 30, 1985.

D.J. Lerma, Brownsville, for appellant.

Ben Euresti, Jr., Dist. Atty., Brownsville, for appellee.

## OPINION

PER CURIAM.

Appellant was convicted of capital murder by a jury and received a sentence of life imprisonment. He appeals that conviction alleging two grounds of error: that the trial court improperly admitted a photograph of the victim into evidence, and that there is insufficient evidence to support the conviction.

Appellant's first ground of error asserts that the trial court erred in admitting into evidence an 8 × 10 inch black and white photograph depicting the head of the victim after the pathologist had opened the scalp during the autopsy to expose the damage to the skull from bullet wounds. Six other photographs were offered by the State and admitted, showing the victim at the crime scene. Four were 8 × 10 inch, black and white photographs and two were 3 × 3 inch color photographs.

The rule regarding admissibility of photographs was set forth in *Martin v. State*, 475 S.W.2d 265, 267–268 (Tex.Crim.App. 1972) as follows:

> [I]f a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury.

If a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible.... We recognize there will be cases where the probative value of the photographs is very slight and the inflammatory aspects great; in such cases it would be an abuse of discretion to admit the same.

Appellant objects to the admission of the photograph at trial on the basis that its only purpose was to inflame the minds of the jury and argues that *Terry v. State*, 491 S.W.2d 161 (Tex.Crim.App.1973) is controlling. In *Terry*, the Court reversed the defendant's murder conviction based upon the introduction of post-autopsy color photographs that showed massive mutilation of the body of a child, which was caused by the autopsy rather than by an act committed by the defendant. The Court concluded that the pictures were, at most, only remotely connected with the crime, clearly served to inflame the minds of the jury, and were inadmissible.

■ Since *Terry*, post-autopsy photographs have been held admissible where they were used to illustrate and clarify a medical expert's description of the injuries, and reveal the cause of death. *See Whitley v. State*, 635 S.W.2d 791 (Tex.App.—Tyler 1982, no pet.); *Harris v. State*, 624 S.W.2d 418 (Tex.App.—Eastland 1981), affirmed, 661 S.W.2d 106 (Tex.Crim.App. 1983).

In the case at bar, the photograph, which was introduced by a police officer who attended the autopsy, was not used to illustrate or explain the testimony of a medical expert as to the nature of the injuries or the cause of death. The photograph, therefore, had little probative value.

■ Only where the probative value of photographs is very slight *and* the inflammatory aspects great, would it be an abuse of discretion to admit them. *Martin*, 475 S.W.2d at 268. The trial judge's action in admitting a photograph will only be disturbed upon a showing of an abuse of discretion. *Terry*, 491 S.W.2d at 163. The

test for harmless error is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction or affected the punishment assessed. *Johnson v. State*, 660 S.W.2d 536, 538 (Tex.Crim.App.1983). We cannot say that appellant was so prejudiced by admission of this photograph, as to guilt or punishment, as to warrant reversal. Appellant's first ground of error is overruled.

Appellant's second ground of error complains that the evidence was insufficient to support the verdict. The indictment alleged that Enrique Calderoni, Jr. and the appellant, Rogelio Castro Izaguirre, on or about July 11, 1983, unlawfully, "intentionally and knowingly cause[d] the death of an individual, DAVID SOLIS, JR., by shooting him with a firearm, to-wit: a gun, while said DEFENDANTS were in the commission of, and attempted commission of, the offense of robbery of DAVID SOLIS, JR."

In the case at bar, we must determine if there was sufficient evidence to support the conviction of capital murder, which was a murder committed in the course of an attempted robbery. *See* TEX. PENAL CODE ANN. § 19.03 (Vernon Supp.1985). In order to answer this question, we must ask if there was evidence showing appellant's involvement in the crime under TEX. PENAL CODE ANN. § 7.02 (Vernon 1974).

§ 7.02. Criminal Responsibility for Conduct of Another

(a) A person is criminally responsible for an offense committed by the conduct of another if:

(1) ...;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) ....

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of

the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

■ The undisputed evidence is that appellant's co-indictee, Enrique Calderoni, Jr., robbed a convenience store and shot and killed an employee in the course of that robbery. Appellant's culpability, if any, arises under § 7.02 of the Penal Code, which makes appellant a party to the crime if he encouraged or aided the commission of the crime with the requisite intent. Evidence of appellant's involvement comes largely from an accomplice, Arturo Garza Fox, whose testimony must be corroborated by other evidence. TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1966). The testimony of the accomplice of appellant's involment in the crime, standing alone without corroboration, will not support the conviction. In our analysis, therefore, the evidence given by the accomplice will be separated from the other evidence, and then that other evidence will be examined to see if it sufficiently corroborates Fox's testimony.

In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984).

The evidence shows that on July 11, 1983, Enrique Calderoni, Arturo Garza Fox and appellant crossed the border from Mexico into the United States, and met as prearranged in a parking lot in Brownsville, Texas. They spent the day together at South Padre Island, where they stole a car and where appellant bought a hat that was later discovered at the crime scene. At 11:30 p.m., appellant, Calderoni and Fox went to the apartment of Ralph Esparza, an acquaintance of Fox's. The apartment was located in the Fort Brown area of Brownsville, across a large parking lot from a Superette convenience store.

Esparza testified that Calderoni took him aside and asked for a ski mask. Esparza replied that he did not have one but that Calderoni could take whatever he wanted from the linen closet. Esparza later found that a large strip of material had been torn from one of his sheets in the linen closet. After the three left, Esparza and his friend, Gino Perez, went to the Superette to buy beer. Esparza testified that he saw appellant, Calderoni and Fox standing by Fox's Blazer talking loudly. After buying the beer, Esparza testified that he saw the Fox vehicle pass slowly in front of the Superette and he waved to them. Esparza said that he learned about half an hour later that the operator of the Superette had been killed.

Gino Perez, Esparza's guest at the apartment, testified that Calderoni had appeared to be intoxicated and that he was carrying a gun. He also testified to seeing the three standing in the parking lot talking and, later, driving slowly in front of the Superette.

Both Esparza and Perez testified that appellant had been wearing the hat which the police later found near the body of the victim, David Solis, Jr.

Frank Culver, a security guard at the motel across the street from the Superette, testified that he heard what sounded like shots or firecrackers. He was summoned to the front desk and was told the shots seemed to come from the direction of the Superette. Culver and another employee, Carlos Cardosa, went to investigate. They saw a man, later identified as Calderoni, walking away from the Superette with a brown bag under his arm. They made eye contact with Calderoni as they crossed the street in his direction, and at one point, Calderoni pointed a pistol at them before running and getting into a Blazer automobile. Culver and Cardoza hailed a cab and followed the Blazer to the international bridge a few blocks away, where they lost sight of the Blazer after it sped through Mexican customs into the city of Matamoros. These witnesses testified that there were three individuals in the Blazer, and they recorded its license number. The Blazer was registered to the parents of

Arturo Garza Fox. Culver and Cardoza later identified Calderoni from a photographic line up conducted by the Brownsville Police Department.

Arturo Garza Fox testified for the State. Fox testified that he, Calderoni, and the appellant were together all day after meeting in the early afternoon. They drove to South Padre Island in Fox's Blazer and Calderoni stole a car which he later abandoned. Fox did not testify to a common plan·to rob the Superette but stated certain particulars of the appellant's involvement: that when they first met in the morning, Calderoni had two pistols: a .38 that he kept and an automatic pistol he gave to the appellant, who carried it all day; that the appellant bought the hat in South Padre Island that was later found near the victim's body; that the appellant loaned the hat to Calderoni just prior to the crime; that the appellant helped Calderoni in his attempts to put on the makeshift mask made from Esparza's sheet; that while Calderoni was robbing the store and Fox and appellant were waiting in the Blazer for Calderoni's return, the appellant told Fox not to leave and to do what he was told; that when Calderoni ran to the car after the robbery and climbed in, the appellant told Fox to leave quickly; and that immediately prior to the robbery Calderoni and the appellant spoke together outside the hearing of Fox.

Appellant testified in his own behalf. He said that he gave Calderoni his hat when Calderoni went to get beer, that he did not help Calderoni put on the cloth mask, nor did he know that Calderoni was going to rob the store.

■ In determining whether appellant was a party to this offense and bears criminal responsibility, we are permitted to look to events during and after the commission of the offense. *Freeman v. State*, 654 S.W.2d 450, 453 (Tex.Crim.App.1983); *Wygal v. State*, 555 S.W.2d 465 (Tex.Crim.App.1977). Participation of an accused in a criminal enterprise may be inferred from the circumstances and need not be shown by direct evidence. *Freeman*, 654 S.W.2d at 454.

■ As previously stated, since the evidence showing appellant's involvement in the crime was largely supplied by the accomplice, Arturo Garza Fox, it must be corroborated. TEX.CODE CRIM.PROC. ANN. art. 38.14 (Vernon 1966). This requires that we address the unassigned error of the sufficiency of the corroboration of the accomplice testimony as to the involvement of the appellant in the commission of the murder that was committed in the course of the robbery or attempted robbery. The authority of the courts of appeals to consider unassigned error in criminal cases is not open to question. *Carter v. State*, 656 S.W.2d 468 (Tex.Crim.App.1983); *Garza v. State*, 676 S.W.2d 185, 187 (Tex.App.—Corpus Christi 1984, no pet.). The testimony of an accomplice witness will not support a conviction unless it is corroborated by "other evidence tending to connect the defendant with the offense committed." TEX.CODE· CRIM.PROC. ANN. art. 38.14 (Vernon 1966). To test the sufficiency of corroboration in a capital murder case, we eliminate the evidence of the accomplice witness and examine the evidence of the other witnesses to determine whether there is any evidence to connect a defendant with the commission of the offense as to that element which elevates the murder to capital murder. *Granger v. State*, 605 S.W.2d 602 (Tex.Crim.App.1980); *Fortenberry v. State*, 579 S.W.2d 482 (Tex.Crim.App.1979).

■ All of the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary to support the testimony of an accomplice. *Mitchell v. State*, 650 S.W.2d 801 (Tex.Crim.App.1983). Accomplice testimony may be corroborated by circumstantial evidence. *Paulus v. State*, 633 S.W.2d 827 (Tex.Crim.App.1981). Such facts can be the presence of the accused in the company of the accomplice or the suspicious conduct of the accused, such as flight after the crime was committed. *Passmore v. State*, 617 S.W.2d 682 (Tex.Crim.App.1981; *see*

*Mitchell v. State,* 650 S.W.2d 801 (Tex. Crim.App.1983; *Cooper v. State,* 631 S.W.2d 508 (Tex.Crim.App.1982).

 We hold that there is sufficient evidence to show that appellant aided or attempted to aid Calderoni in the commission of the robbery with the intent to promote or assist the commission of the crime. The following evidence supports the jury's conclusion of appellant's guilt:

1. That Izaguirre, Calderoni and Fox were together immediately preceding and immediately after the robbery;

2. That the appellant remained in the getaway vehicle with Fox while Calderoni was robbing the store;

3. That Calderoni was carrying a pistol prior to the robbery and the presence of the pistol was apparent to the witness, Perez;

4. That Izaguirre, Calderoni and Fox slowly drove by the store twice after leaving Esparza's apartment in the Blazer automobile;

5. That the getaway vehicle containing Izaguirre and Fox remained near the store during the robbery by Calderoni;

6. That while the three were together earlier in the day Calderoni stole a car;

7. That Calderoni was wearing the hat of appellant during the robbery;

8. That Calderoni tore off a piece of bed sheet to use as a mask; and

9. That the three were in heated discussion just prior to the robbery in the parking lot near the Superette near the getaway Blazer automobile.

10. That Calderoni, while carrying a brown paper bag, pointed a pistol at the security guard after leaving the Superette and immediately fled in the Blazer across the International Bridge with two other men.

We conclude that the non-accomplice testimony tended to connect appellant with the offense and was sufficient to corroborate the testimony of the accomplice.

Appellant's second ground of error is overruled and the judgment of the trial court is AFFIRMED.

KENNEDY, J., concurs.

KENNEDY, Justice, concurring.

I concur in the holding of the majority herein, however, I would like to add the following by way of observation.

In 1983 and ten years after *Terry v. State,* 491 S.W.2d 161 (Tex.Crim.App.1973), our Court said in *Reimer v. State,* 657 S.W.2d 894 (Corpus Christi 1983, no pet.):

Since Martin, we have not found a case in which the appellate courts of Texas reversed a conviction because the prejudicial effect of the admitted photographs greatly outweighed their probative value.

In a footnote to this statement *Terry* was very briefly mentioned and distinguished.

Since in every case involving photographs of victims *Terry* has been successfully distinguished it appears that *Terry* seems to have made no lasting impression upon the jurisprudence of the state, save as a way station to be passed in affirming criminal convictions based upon the law as set down in *Martin v. State,* 475 S.W.2d 265 (Tex.Crim.App.1972). In affirming such convictions, the sequence to be followed seems to be (1) recite the law set down in *Martin,* (2) with a passing salute, acknowledge *Terry* and (3) distinguish the case before the court from *Terry* both as to degree of gruesomeness and relevance, which is not difficult given the subjective nature of each concept. The majority have done this, and I accept their reasoning.

I agree with the holding and reasoning therefor of the majority with respect to the remaining grounds of error and concur in affirming the judgment of the trial court.