Katherine Michelle
**PERSONS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–159–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 27, 1986.

Tom Whitlock, Denton, for appellant.

Jerry Cobb, Jim E. Crouch, Denton, for State.

Before FENDER, C.J., and JOE SPUR-LOCK, II and HILL, JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from a conviction for the offense of injury to a child. *See* TEX. PENAL CODE ANN. sec. 22.04 (Vernon Supp.1986). Appellant was certified to stand trial as an adult under TEX.FAM. CODE ANN. sec. 54.02 (Vernon Pamph. Supp.1986). The jury found appellant guilty and assessed punishment at 15 years in the Texas Department of Corrections.

We affirm.

On January 3, 1985, appellant, Katherine Persons, gave birth to a female child. Appellant testified that on January 8, 1985, she accidently let the child slip off of the counter in the bathroom while she was bathing it and the child struck its head on the toilet when it fell. Appellant testified that she noticed a swelling on the child's head when she dressed her. Appellant further testified that she dropped the child on the kitchen floor while she was attempting to prepare a bottle. These were the only injuries to the child to which appellant testified. The child later died of head injuries at a hospital.

Dr. Linda Norton and Dr. Allen Stilwell testified that the massive injuries to the child's head were caused by severe blows or some kind of trauma to the top, sides and back of the head.

In her first ground of error, appellant contends that the trial court erred in receiving prejudicial hearsay testimony from Dr. Linda Norton, an expert witness, over appellant's objection. Norton testified that she was a former medical examiner who has performed more than 50 autopsies on

infants. She testified that she had an opportunity to review the autopsy report prepared by Dr. Allen Stilwell concerning appellant's child. She stated that the child sustained massive injury to her head which involved virtually the entire head. She testified, using photographs, that red areas on the head represented areas of blunt trauma. She testified that the child's head was "literally ... fragmented by multiple massive blows." She stated that, in her opinion, there was "no way" that that kind of head injury could result from the falls that were described. At that point, Lee Gabriel, attorney for the State, asked Dr. Norton whether she was familar with statistical data and research that had been done concerning the falls of children from heights of approximately three feet. At that time, appellant objected as follows:

MR. WHITLOCK [Appellant's attorney]: I object to this oration by the Doctor simply, because number one, whoever—whatever Doctor made this study, whatever his intent was, he would be the only person that could testify as to that, it's hearsay. And as to what the studies have found, the studies themselves would be the best evidence, and completely a narration intended to prove no issue in this case, and I object to the narration of the witness.

In *Hoffman v. State*, 397 S.W.2d 461, 462 (Tex.Crim.App.1965), a blood chemist was asked to give his opinion as to whether a person with a blood alcohol level of 0.10 percent is intoxicated. He stated that in his opinion, under those circumstances, a person would be intoxicated. He was then asked whether there were any authorities which shared this opinion. At that point, the appellant in that case objected. The Court of Criminal Appeals held that "an expert in giving opinion testimony may corroborate his opinions by referring to scientific authorities." *See id. See also Long v. State*, 649 S.W.2d 363, 364–65 (Tex.App. —Fort Worth 1983, pet. ref'd).

■ We hold that Dr. Norton was properly permitted to corroborate her opinion by showing that it is shared by the article in the pediatric journal to which she referred. *See Hoffman*, 397 S.W.2d at 462. Appellant's first ground of error is overruled.

In her second ground of error appellant contends that the trial court erred in overruling her motion to quash the indictment because the indictment failed to give appellant notice as to what she was to defend against. Appellant was indicted under a three count indictment. In essence, the indictment alleged that appellant caused the death of or serious bodily injury to the baby "by manner and means unknown to the Grand Jury." Appellant contends that the indictment is inadequate to meet the constitutional requisite of notice to her because she could not determine whether she was called upon to defend against "a beating, a stabbing, a drowning, a shooting," or something else.

Appellant contends that the grand jury had before it Dr. Stilwell's autopsy report and so it should have known what the manner and means were. The autopsy report states that the face of the child was swollen and that there were extensive skull fractures. The conclusion states:

It is our opinion that [the baby] ... died as a result of extensive injuries to the brain and multiple skull fractures. These injuries are inconsistent with the stated history of a fall while being fed, but it is our further opinion that severe trauma was inflicted on the head with subsequent brain injuries and death.

Linda Brock, a member of the grand jury, testified that in an attempt to determine the manner and means of death the grand jury examined among other things appellant's statement, the autopsy report, the certification hearing record, and psychological records. When asked whether the grand jury was able to determine how the injuries occurred, Brock answered "[n]o, we were not able to determine that."

■ The grand jury must use reasonable diligence to ascertain the manner and means of death. *See Jackson v. State*, 516 S.W.2d 167, 172 (Tex.Crim.App.1974). The

testimony of Brock shows that diligence was used. Contrary to appellant's assertions, the manner and means used to inflict the injuries to the baby were not evident from the autopsy report.

Concerning the "manner" of causing the injuries, Dr. Norton testified at trial that the injuries most likely occurred when the child was picked up and thrown or swung so that her head hit a flat surface. Dr. Stilwell testified that the injuries were caused by a severe beating. The grand jury could not know the manner in which the injuries were inflicted, merely that they existed. Further, the jury could not know the means, or with what, the injuries were inflicted. Where it is doubtful how death was caused, it may be alleged that it was done by some manner and means unknown to the grand jury. *See Brown v. State*, 475 S.W.2d 938, 946 (Tex.Crim.App.1971); *Porter v. State*, 215 S.W. 201, 203 (Tex.Crim. App.1918). To require the addition of words such as "by swinging her against the wall" or "by beating her with a blunt instrument" would put the grand jury in a position of speculating as to the circumstances of the offense. Appellant's second ground of error is overruled.

In her third ground of error appellant contends that the trial court erred in admitting a copy of an autopsy report over appellant's objection. The autopsy report was prepared by Dr. Allan Stilwell. Dr. Stilwell testified that the report bears his signature, that there were no additions or deletions from the report and that it was the same report that he prepared. At trial, appellant objected on the ground that the copy was not an original and that unless the original had been lost or misplaced, it was not admissible. At no time did appellant question the authenticity of the copy.

The crux of appellant's argument is that the duplicate was not the best evidence of the autopsy report. Appellant cites us to TEX.R.EVID. 1002 and 1004 in support of her proposition.

We find that the rules cited by appellant, although applicable in civil cases, are not applicable here since they are not statutory rules. Article 38.02 of the Texas Code of Criminal Procedure provides that the rules of evidence in the *statutory* law of this state in civil cases should, as far as applicable, govern criminal actions when they do not conflict with the Code of Criminal Procedure or the Penal Code. TEX. CODE CRIM.PROC.ANN. art. 38.02 (Vernon 1979). Texas law provides that a copy may be introduced into evidence "where there is no bona fide dispute as to its being an accurate reproduction of the original." TEX.REV.CIV.STAT.ANN. art. 3731c (Vernon Supp.1986). This statute is applicable to criminal trials. *See Silva v. State*, 635 S.W.2d 775, 777 (Tex.App.—Corpus Christi 1982, pet. ref'd). There being no bona fide dispute that this copy was an accurate reproduction of the original, we hold that the document was admissible under art. 3731c, and the best evidence rule (TEX.R.EVID. 1002) does not apply to render it inadmissible. Appellant's third ground of error is overruled.

In her fourth ground of error appellant contends that the trial court erred in failing to sustain appellant's objection to "inflammatory and prejudicial" photographs.

State's Exhibits 2 through 16, which were photographs of the body of the baby, were offered into evidence and all were admitted by the trial court. Exhibits 8, 9, 10, and 11 were admitted over appellant's objection. The photographs, with the exception of Exhibits 8, 9, 10 and 11, depicted the body of the infant child from different sides and angles to emphasize the bruises and swelling of the head, as well as bruises of the back and arms. Exhibits 8 through 11 were after-autopsy photographs.

Appellant contends that Exhibits 8 through 10 were basically "the same" and had very little probative value. Appellant further contends that the showing of Exhibits 8 through 11 was highly prejudicial to appellant.

The record reveals the following testimony from Dr. Stilwell concerning Exhibits 8 through 11:

Q. [By State's attorney]: Doctor, Exhibits 8 through 10, what specifically do they purport to represent?

A. These shows [sic] the extensive nature of the soft tissue bruising of the scalp and the overlying tissues of the skull bone on all sides.

Q. So do those show different views of the head?

A. Yes.

Q. State's Exhibit Number 11, what specifically does that represent?

A. This is not a surgical procedure. This is the condition that the bones of the skull were in and shows the extensive and severe nature of all the fractures of the skull.

Q. Does that picture show the fractures were already existing at the time you began the autopsy with the fragments of the skull layed back?

A. That's correct.

Q. Is it your opinion that it is more easy to understand the extent and the nature of the skull fractures from that photograph than it would be for you to describe them?

A. Much so, yes.

. . . .

THE COURT: Doctor, what did 8 through 10 show that could have any meaning to a jury?

DR. STILWELL: Well, Your Honor, it shows—there are different views, the left side, the right side—well, that's a repeat. Which shows the extensive nature of the hemorrhage that goes all the way around the head, both sides at the top.

THE COURT: What is indicative of the hemorrhage?

DR. STILWELL: Well, it indicates trauma of one kind or another.

THE COURT: To me, I am looking here and I see the tissue, but as a layman I do not understand why that could look any different than any other tissue. What indicates the hemorrhaging itself?

DR. STILWELL: Well, the red color, Your Honor. This is all hemorrhaging here, where the white area is, this is the normal covering of the skull. All this is hemorrhage.

In *Martin v. State*, 475 S.W.2d 265 (Tex.Crim.App.), *appeal dismissed*, 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972), the Court of Criminal Appeals said:

[I]f a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible.

*Id.* at 267. The post-autopsy photographs here aided the jury in determining the injuries alleged to be inflicted by appellant. *See Harris v. State*, 661 S.W.2d 106, 107 (Tex.Crim.App.1983). Dr. Stilwell testified that the photographs other than Exhibits 8 through 11 showed bruising and swelling of the child's head and body. Exhibits 8 through 11 showed the red areas where the child had hemorrhaged and also showed the extensive fractures of the skull. Because a verbal description of the hemorrhaged areas and the fractured skull was admissible, a photograph depicting the same is also admissible. *See Martin*, 475 S.W.2d at 267. The fact that the photographs were post-autopsy photographs does not make them inadmissible as long as they aid the jury in understanding the injury rather than emphasize the mutilation of the victim caused by the autopsy surgery. *See Harris*, 661 S.W.2d at 107.

Appellant contends that the instant case is similar to the facts and circumstances reviewed by the court in *Terry v. State*, 491 S.W.2d 161 (Tex.Crim.App.1973). In *Terry*, eight color slides were introduced and shown on a screen so the jury could view them. The first three (Exhibits 2, 3, and 4) showed the body of the child depicting many bruises. Exhibit 5 was an X ray showing a broken bone in the arm. The rest of the Exhibits were after-autopsy photos. One photo showed a cut from the chest down to the arm to expose the fractured bone in the arm, which had already been shown to be fractured by the X ray.

Another slide depicted torn vessels although testimony from the expert revealed that he could not be sure whether the tearing was caused by the autopsy surgery or otherwise.

The court in *Terry* said:

The X-ray showing the broken arm is admissible. It bears on the degree of the atrociousness of the crime. Such proves a relative issue and enables the jury to better understand the testimony.

. . . .

It is apparent from these exhibits that one sees primarily what was done by the person who performed the autopsy rather than that alleged to have been done by appellant. . . .

. . . .

. . . The jury, in the absence of the explanation of isolated areas pointed out by the expert witness, sees only severed parts of a human body.

*Id.* at 163–64.

The photographs shown to the jury in the instant case differ from the slides shown to the jury in *Terry* in that Exhibits 8 through 11 showed hemorrhaging and skull fractures which were not shown by other exhibits or X rays. In fact, Dr. Stilwell testified that the skull fractures were difficult to diagram and that the photographs aided him in making his findings and explanations as to the injuries of the child. We find that the photographs along with the explanation by Dr. Stilwell of the isolated injured areas aided the jury and helped them understand the extent of the injuries. Appellant's fourth ground of error is overruled.

The judgment is affirmed.