NUMBER 13-04-049-CR

 

                                 COURT
OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS CHRISTI - EDINBURG

 



 

JUAN ERNESTO GONZALEZ
APARICIO,                                       Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

 

 



                             On
appeal from the 206th District Court

                                        of
Hidalgo County, Texas.

 



 

                              MEMORANDUM
OPINION[1]

 

                      Before
Justices Rodriguez, Castillo, and Garza

                           Memorandum
Opinion by Justice Castillo

 

 








A jury convicted appellant, Juan Ernesto Aparicio,
of manslaughter.[2]  The jury assessed punishment at a term of
twenty years in the Institutional Division of the Texas Department of Criminal
Justice.  By two issues, Aparicio
assertsineffective assistance of counsel and erroneous admission of evidence.  We affirm.

I.  Background

Aparicio's thirteen-month-old son died of a broken
spine, ruptured heart, and punctured lung. 
Aparicio gave police and his wife different accounts of events leading
to the child=s death.  His
written statement to police and three letters addressed to his wife while in
jail were admitted in evidence.  The sole
consistency in his statements was that he was the only adult with the child
when the child sustained the fatal injuries. 
The jury rejected the State=s theory of capital murder and convicted Aparicio of
manslaughter.  

II.  Effective
Assistance of Counsel








By his first issue, Aparicio asserts that his trial
counsel was ineffective because the totality of the representation shows that defense
counsel failed to object to (1)  hearsay,
(2) the admission of his three letters to his wife while incarcerated, and
(3)  autopsy photographs.  Aparicio argues that the ineffectiveness is
so apparent from the record that it may be disposed of on direct appeal.  See Thompson v. State, 9 S.W.3d 808,
814 n.6 (Tex. Crim. App. 1999).[3]


A.  Standard
of Review

There are just a few situations in which a
conviction can be overturned even though the trial court has done nothing
wrong.[4]  One such situation is where defense counsel
fails to act on behalf of the defendant in any meaningful way or commits errors
that prejudice the defendant.  See id.  If the misconduct in question does not amount
to the complete denial of counsel, then some standard of harm, variously
phrased as "prejudice" or "materiality," is required to
establish a constitutional violation leading to reversal of the
conviction.  Id. at *14-*15.  Ineffective assistance of counsel claims are
governed by the Strickland materiality/prejudice standard:  whether "there is a reasonable
probability that . . . the result of the proceeding would have been
different."  Strickland v.
Washington, 466 U.S. 668, 694 (1984). 
To  meet the prejudice prong of Strickland,
a defendant must show a reasonable probability that, but for counsel's errors,
the outcome of the proceeding would have been different.[5]









Under Strickland, a defendant claiming
ineffective assistance of counsel must demonstrate by a preponderance of the
evidence that (1) counsel's conduct "fell below an objective standard of
reasonableness," and (2) this incompetence caused the defendant prejudice.[6]  Strickland, 466 U.S. at 687‑88; Salinas
v. State, No. AP-74524, 2005 Tex. Crim. App. LEXIS 741 at *9‑*11
(Tex. Crim. App. May 18, 2005) (designated for publication).  Under Strickland, however, there are
few situations in which prejudice under the second prong will be presumed
because these errors are both "easy to identify" and "easy for
the government to prevent."  Ex
parte McFarland, No. A.P.-75,044, 2005 Tex. Crim. App. LEXIS 740, at *18
(Tex. Crim. App. May 18, 2005) (designated for publication).   Such presumed‑prejudice errors include
the "actual or constructive denial" of counsel.  Id. 









Rarely will the trial record contain sufficient
information to permit a reviewing court to fairly evaluate the merits of such a
serious allegation: "in the majority of cases, the record on direct appeal
is simply undeveloped and cannot adequately reflect the failings of trial
counsel."  Scheanette v. State,
144 S.W.3d 503, 510 (Tex. Crim. App. 2004) (citing Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002)). 
A reviewing court can frequently speculate on both sides of an issue,
but ineffective assistance claims are not built on retrospective speculation;
rather, they must "be firmly founded in the record."  Id.

B.  Discussion

The record shows, as Aparicio asserts, that defense
counsel did not object to  his wife=s testimony that Aparicio denied knowledge regarding
the child=s injuries. 
Defense counsel also did not object to testimony from the police officer
Aparicio  flagged down while en route to
the hospital, who testified that Aparicio requested an ambulance.[7]  The police officer testified that Aparicio
gave her two different explanations regarding how he found the injured child
and told her the child fell off a chair. 









The record also shows, as Aparicio argues, that the
trial court admitted, without objection, three letters he wrote to his wife
while he was in jail.  In the letters,
Aparicio professed his love for his deceased son.  In the first, he stated he entered the room
and saw the couple=s daughter standing on the child and then falling on
him.  In the second letter, Aparicio
denied he harmed the child and stated the child accidentally lost his
life.  He stated he accepted the charge
of manslaughter but not the "other" charge. In the third letter,
Aparicio explained that he stepped on the child, when Aparicio awoke and arose
quickly from the sofa.  Aparicio does not
complain that the trial court admitted his written statement to police.  In that statement, Aparicio explained that he
laid across the child when wrestling with him.

Aparicio further complains that defense counsel did
not object to three autopsy photographs admitted in evidence.  The photographs show the broken vertebra, the
clot enveloping the heart, and the burst chamber in the heart.[8]

The Texas Court of Criminal Appeals has held several
times that in cases like this "the record on direct appeal is simply
undeveloped and cannot adequately reflect the failings of trial
counsel."  See Freeman v. State,
125 S.W.3d 505, 506 (Tex. Crim. App. 2003). 
The United States Supreme Court generally agrees.  Id. 
(citing Massaro v. United States, 538 U.S. 500, 508-09 (2003)
(stating that when ineffective assistance of counsel claim is raised on direct
appeal, appellate counsel and the court must proceed on a trial record not
developed precisely for the object of litigating or preserving the claim and
thus often incomplete or inadequate for this purpose)).  

C. 
Disposition








Aparicio related four different versions regarding
the child=s injury.  His
core complaint is that defense counsel=s failure to object to the admission of his statements
and autopsy photographs denied him effective assistance of counsel.  The jury rejected the State's theory of
capital murder and convicted on the lesser included offense of manslaughter.  We conclude that trial counsel's errors, if
any, are not properly reviewable on direct appeal.  See Thompson, 9 S.W.3d at 814 n.6.  Thus, based on the record before us, we could
only speculate as to why counsel acted or failed to act at trial.  Ex parte Torres, 943 S.W.2d 469, 475
(Tex. Crim. App. 1997) (en banc); Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994) (en banc) (Baird, J., concurring).  We cannot speculate whether defense counsel
relied on legitimate trial strategy.[9]  Id. 
Therefore, without more, we must presume that counsel acted pursuant to
a reasonable trial strategy.  Id.;
Scheanette, 144 S.W.3d at 510; see Andrews v. State, 159 S.W.3d
98, 101 (Tex. Crim. App. 2005).  We
overrule the first issue.

III. 
Admission of Evidence

By his second issue, Aparicio asserts that the trial
court abused its discretion by admitting (1) evidence that (a) the child
sustained a sprained ankle when he was two months old while in Aparicio's care,
(b) Aparicio battered his wife, and (2) autopsy photographs.[10]  

A.  Harm
Analysis








Even assuming that Aparicio preserved error and the
trial court abused its discretion in admitting the evidence, Aparicio is not
entitled to reversal unless he shows that the error was: (1) of constitutional
magnitude; or (2) affected a substantial right.  See Tex.
R. App. P. 44.2(a), (b).  A
violation of rules of evidence that results in erroneous admission of evidence
is non‑constitutional error.  Couchman
v. State, 3 S.W.3d 155, 160 (Tex. App.BFort Worth 1999, pet. ref'd).  We begin our harm analysis under rule
44.2(a), which imposes a more stringent standard than rule 44.2(b).  Guidry v. State, 9 S.W.3d 133, 151
n.14 (Tex. Crim. App. 1999).  Under rule
44.2(a), if the appellate record in a criminal case reveals constitutional
error subject to harmless‑error review, we must reverse a judgment of
conviction or punishment unless we determine beyond a reasonable doubt the
error did not contribute to the conviction or punishment.  Tex.
R. App. P. 44.2(a); Wesbrook v. State, 29 S.W.3d 103, 119 (Tex.
Crim. App. 2000) (en banc); Aguirre‑Mata v. State, 992 S.W.2d 495,
498 (Tex. Crim. App. 1999).  In making a
harmless‑error determination under rule 44.2(a), we do not focus on the
weight of other evidence of guilt.  Montgomery
v. State, 821 S.W.2d 314, 317 (Tex. App.BDallas
1991, pet. ref'd) (en banc) (citing Harris v. State, 790 S.W.2d 568, 587
(Tex. Crim. App. 1989) (en banc)); see Erazo v. State, 144 S.W.3d 487,
489-92 (Tex. Crim. App. 2004).  Rather,
we determine whether the error might have prejudiced a juror's decision‑making
process.[11]  Montgomery, 821 S.W.2d at 317. 








Whether the evidence is sufficient to convict
without the inadmissible evidence is not the sole determinant in a rule 44.2(a)
harm analysis.  See Cardenas, 971
S.W.2d at 651.  Rather, we assess whether
a reasonable probability exists that the erroneously admitted evidence
contributed to the jury's verdict.  Id.  Thus, we must calculate as closely as
possible the probable impact of the error on the jury in the context of the
other evidence introduced at trial.  Harris,
790 S.W.2d at 587.  In making this
determination, Harris directs us to examine six factors:  (1) the source of the error, (2) the nature
of the error, (3) whether and to what extent the State emphasized the error,
(4) any collateral implications of the error, (5) the weight a juror would
probably place on the error, and (6) whether declaring the error harmless would
encourage the State to repeat it with impunity. 
Id.; Mosley v. State, 960 S.W.2d 200, 204‑05 (Tex.
App.BCorpus Christi 1997, no pet.).  We are "obligated to examine the entire
record in a neutral, impartial and even‑handed manner and not 'in the
light most favorable to the prosecution.'"  Harris, 790 S.W.2d at 586.

B. 
Disposition








We have reviewed the record.  The source and nature of the error, if any,
was the trial court's admitting the autopsy photographs, evidence of the child=s sprained ankle while in Aparicio's care, and
evidence of Aparicio's prior assaults on his wife.  On this record, we cannot conclude that the
State emphasized the evidence.  See
id.  Further, while other evidence of
guilt is not a sole determinant, any collateral implications of admitting the
evidence and the amount of weight the jury placed on the evidence were minimal
because the jury heard other, substantial evidence related to Aparicio's
conduct, particularly from his own oral and written statements.  We also cannot say that it is likely that the
State will repeat this type of error, if any, with impunity.  See id.  In addition, photographs were used at trial in
conjunction with the medical examiner's testimony to show the victim's wounds,
illustrate the cause of death, and exclude any potential causes of death other
than the injuries inflicted by Aparicio.  See Izaguirre v. State, 695 S.W.2d 224,
226 (Tex. App.BCorpus Christi 1985, no pet.).  








The most significant concern in a rule 44.2(a) harm
analysis is the effect of any erroneously admitted evidence on the integrity of
the trial process.  Harris, 790
S.W.2d at 586.  While not determinative
of the harm question, the presence of overwhelming evidence supporting a jury's
finding of guilt is a factor in the evaluation of harmless error under rule
44.2(a).  Id.  The evidence in this case permitted the jury
to find all of the elements of the charged offense.  The evidence was not contradicted.  Given this evidence, the jury was clearly not
equally balanced on the issue of guilt or innocence.  Indeed, nothing suggests the jury would have
returned a different verdict "but for" admission of the
evidence.  Tibbs v. State, 125
S.W.3d 84, 96 (Tex. App.BHouston [14th Dist.] 2003, no pet).  We conclude Aparicio was not harmed by the
admission of the evidence.[12]  We overrule the second issue.

IV.  Conclusion

Finding no reversible error, we affirm the trial
court judgment.

 

ERRLINDA CASTILLO

Justice

 

Do not publish.

Tex. R. App. P.
47.2(b).

 

Memorandum
Opinion delivered and filed

this
28th  day of July, 2005.

 











[1] See Tex. R. App. P. 47.2. and 47.4.  





[2] The indictment alleged that, on or
about July 4, 2003, Aparicio caused the death of a child, Juan Ernesto
Aparicio, Jr., by placing his body on top of the victim's body.  A person commits capital murder if he causes the
death of an individual under six years of age.  See
Tex. Pen. Code Ann. ' 19.03(a)(8) (Vernon Supp. 2004-05).  The jury convicted on the lesser included
offense of manslaughter.  See id.
' 19.04(a) (Vernon 2003).





[3] See Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim.
App. 2002) (generally, the record on direct appeal will not be sufficiently
developed to show that counsel's representation was deficient under first prong
of Strickland); Thompson v. State, 9 S.W.3d 808, 814 n.6 (Tex.
Crim. App. 1999) (noting that holding should not be construed to mean that an
ineffective assistance claim can never be adequately reviewed on direct
appeal).





[4] Johnson v. State, No. PD‑1623‑03,
2005 Tex. Crim. App. LEXIS, at *12 (Tex. Crim. App. May 25, 2005).





[5] While the "structural" nature
of a complained deprivation may impact the prejudice inquiry, 

Strickland still provides the basic framework
when such deprivations flow solely from defense counsel.  Johnson, 2005 Tex. Crim. App. LEXIS
818, at *22-*23.  Except for the
complete denial of counsel, only a trial court's commission of structural error
can give rise to automatic reversal, with no harm analysis whatsoever.  Id. 
A "structural" error is a federal constitutional error labeled
by the United States Supreme Court as such. 
See id. (citing Cain v. State, 947 S.W.2d 262, 264
(Tex. Crim. App. 1997) (en banc)). 
"The benchmark for judging any claim of ineffectiveness must be
whether counsel's conduct so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a
just result."  See Strickland,
466 U.S. at 686 (emphasis added); see also United States v. Cronic, 466
U.S. 648, 656‑57 (1984) (stating that the critical question is whether
counsel's performance was so deficient that the process lost its character as a
confrontation between adversaries).





[6] To satisfy the second prong of the
Strickland test, we do not require that the appellant show that there
would have been a different result if counsel's performance had not been deficient.  Andrews v. State, 159 S.W.3d 98, 102
(Tex. Crim. App. 2005).  The defendant
must show only that "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been
different.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome." Id.


 

 





[7] Evidence showed that Aparicio
removed the child from the residence, placed him in the vehicle, and flashed
the headlights to attract the officer=s attention.  





[8] The defense theory at trial, in
part, was that the bruise to the child's back was an inch‑ and‑a‑quarter
long and that the medical examiner could not testify what instrumentality
caused the blunt force.

 





[9] "[T]rial counsel should
ordinarily be afforded an opportunity to explain his actions before being
denounced as ineffective."  See
Goodspeed v. State, No. PD-1882-03, 2005 Tex. Crim. App. LEXIS 520, at *5
(Tex. Crim. App. April 6, 2005) (designated for publication).  Absent such an opportunity, an appellate
court should not find deficient performance unless the challenged conduct was
"so outrageous that no competent attorney would have engaged in it."  Id. 
The fact that another attorney may have pursued a different tactic at
trial is insufficient to prove a claim of ineffective assistance.  Scheanette v. State, 144 S.W.3d 503, 509‑10
(Tex. Crim. App. 2004) (citing McFarland v. State, 845 S.W.2d 824, 844
(Tex. Crim. App. 1992) (en banc)).





[10] See Erazo v. State, 144 S.W.3d
487, 491‑92 (Tex. Crim. App. 2004). 





[11] In performing a harmless‑error
analysis under rule 44.2(a),  we isolate
the effect of the error and determine how much weight a juror would probably
place on the error.  Harris, 790
S.W.2d at 587.  If the error was of such
a magnitude that in reasonable probability it disrupted the jury's orderly
evaluation of all the evidence, no matter how overwhelming other evidence of
guilt might have been, then the conviction must be reversed.  Id. at 588.  Unless the overwhelming evidence dissipates
the error's effect on the jury's function in determining the facts, so that it
did not contribute to the verdict, the error is harmful.  Id. at 587.  We ask if a reasonable probability exists
that the evidence, either alone or in context, moved the jury from a state of
nonpersuasion to one of persuasion beyond a reasonable doubt.  Wesbrook, 29 S.W.3d at 119; Cardenas
v. State, 971 S.W.2d 645, 651 (Tex. App.BDallas 1998, pet. ref'd). 
If so, the error is harmful.  Wesbrook,
29 S.W.3d at 119.  

 





[12] 
A conviction will not be reversed "merely because the jury was
exposed to numerous admittedly gruesome pictures."  See Drew v. State, 76 S.W.3d 436, 453
(Tex. App.BHouston [14th Dist.] 2002, pet.
ref'd) (quoting Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App.
1991)).