David Wayne EDLUND, Appellant,

v.

The STATE of Texas, Appellee.

No. 01-83-00157-CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 30, 1984.

Robert Rice, Angleton, for appellant.

Jo Stiles Wiginton, Angleton, for appellee.

Before EVANS, C.J., and BULLOCK and BASS, JJ.

## OPINION

BASS, Justice.

Appellant, David Wayne Edlund, was indicted for the murder of 69 year old Howard C. Davis. Trial was to a jury which, after returning a guilty verdict, assessed punishment at life imprisonment.

We affirm.

On March 11, 1982, W.A. Chaloupka discovered the partially decomposed body of his wife's uncle in Pearland, Brazoria County. The police investigation revealed that the victim had been dead for three to four

weeks and that several of his personal effects and 1977 Oldsmobile Omega were missing.

After an intensive investigation, which involved efforts by authorities from four states, the prosecution introduced a chain of circumstantial evidence tracing appellant from Pearland to Augusta, Georgia.

The State called a friend of the Edlund's who testified that he saw him in Houston on February 5, 1982. Appellant's father testified that appellant had come to Texas intending to visit an uncle in Pearland, and did not return to Augusta, Georgia, until March 1982.

Florida State Trooper, N.F. King, testified that he issued a speeding ticket to appellant on February 28, 1982, near the Georgia border. He said that appellant was driving a 1977 silver Oldsmobile Omega with Texas license plates, and when he questioned Edlund about the origin of the car, he told him it belonged to his uncle "Davis" in Texas.

South Carolina Sheriff's deputy, William Royster, testified that an unidentified citizen turned in a man's wallet, glasses case, the deceased's driver's license, an apartment key, and a copy of the Florida speeding ticket issued to Edlund. Royster then sent a tellex to the Pearland Police Department inquiring about the driver's license and later received a phone call from Pearland Police detective, Jay Chapman. Chapman told Royster that the items belonged to a murder victim and then asked Royster to forward the things to the Pearland Police Department by certified mail.

Augusta Deputy Sheriff, Larry Hatcher, testified that he received a disturbance call on April 7, 1982, and upon arrival at the scene, found appellant standing outside of a locked 1977 Oldsmobile Omega. Edlund told the officer he had locked himself out of his car, but when he was asked to produce proof of ownership, he could not. The officer then impounded the car, and told Edlund he could claim it from police headquarters when he produced the necessary proof of ownership. Officer Hatcher then drove Edlund to the home of his friend, Christopher Perdue.

Christopher Perdue testified that he saw Edlund in Augusta, Georgia, in April 1982, and that he was driving a 1977 Oldsmobile. Appellant asked Perdue if he could switch the license plates on the car with a junk car in Perdue's back yard. After Perdue kept asking where he got the car, Edlund finally admitted that he had stolen the car and a bible, from a man he had stabbed to death in Texas. Edlund traded the license plates off of the cars and then gave the bible to Perdue.

Approximately a month after the body was discovered, the deceased's niece reported to Officer Chapman that charges were being made in Augusta, Georgia, on the deceased's oil company credit card. Detective Chapman then flew to Georgia where he met with Detective Royster and Perdue. Perdue gave Officer Chapman the original Texas license plates from the car and the bible. The two officers then retrieved the impounded car and had it dusted for fingerprints. Those prints were forwarded to the F.B.I. where a fingerprint analyst, Gary Jones, compared them with a sample taken from appellant. Jones testified that the fingerprints were identical. Andy De Sham, a handwriting expert, also testified that he had compared the signatures on the oil credit card receipts, brought to him by Detective Chapman, with samples of both Edlund's and the deceased's handwriting. He stated that in his opinion the receipts from the credit card charges and the Florida traffic ticket were all signed by Edlund.

Medical examiner, Aureilo Espinola, testified he had performed an autopsy on the deceased, and that the victim had died of stab wounds to the chin, arm, chest, and stomach. He further stated that the decomposed condition of the body was consistent with the victim dying on or about February 24, 1982. Espinola further testified that because of the severe decomposition of the body, the exact nature of the murder weapon used in the murder could not be determined. However, he did state

that he thought a knife had been used, and that any of the three knives identified by the witnesses, i.e. Perdue, King, and Blackburn, could have been the murder weapon. These three witnesses identified various knives as being also similar to one generally carried by the appellant, and those weapons were admitted for demonstrative purposes.

Finally, the deceased's apartment manager testified that the key turned in to the South Carolina Police Department fit the door of the victim's Pearland apartment.

In the appellant's first ground of error, he alleges the trial court erred in failing to quash the indictment because the time mentioned was an impossible date. The indictment recites that it is the acts of the Grand Jury of Brazoria County, for the October-March, 1982, Term, and that the offense occurred on or about the 24th day of February, A.D. 1982, before the presentment of the indictment. Tex.Rev.Civ.Stat. Ann. art. 199(23) (Vernon 1984) provides that the second term of the 23rd Judicial District Court, held in Brazoria County, shall be known as the "October-March term," beginning the first Monday of October and continuing through the Saturday before the first Monday of the following April. Appellant contends that there is no period of time from October to March 1982, and that the logical interpretation of this date is from October 1981 to March 1982 which sets the term prior to the date of the commission of the offense.

■ Appellant's interpretation was implicitly overruled in the case of *Griggs v. State*, 235 S.W.2d 154 (Tex.Crim.App.1951) (Op. on reh'g). In that case the court stated:

An indictment returned by a grand jury in such court (i.e. 23rd Judicial District) on December 8, 1948, which charged an offense to have been committed on or about June 18, 1948, charges such offense to have been committed long prior to the beginning of the term on the first Monday in December.

There the term ran from December to May ... 1948, which the court interpreted this term to run from December 1948 to May 1949. Applying the same interpretation to the case at bar it is evident that February 1982 was a date anterior to the term of the grand jury, which ran from October 1982 to March 1983.

Appellant's first ground of error is overruled.

■ In his second, third, and fourth grounds of error, appellant attacks the sufficiency of both the indictment and the evidence to allege and prove that the appellant, David Wayne Edlund, had murdered the deceased, Howard C. Davis, with an instrument, "the exact description of which is unknown to the grand jury." The appellant contends that the trial court erred in failing to quash the indictment as it was vague, etc. or fundamentally defective since it did not give an accurate and specific description of the weapon or the instrument allegedly used in the offense. The State responded to this contention by stating that appellant waived any notice of defects in the indictment because he failed to file a motion to quash at trial. If the exact description of the instrument was indeed "unknown to the grand jury," then appellant would have been denied a more specific allegation even if he had made a proper motion to quash. If the grand jury did not know, they did not know. Therefore, the State's argument of waiver is without merit. However, even if appellant had made a motion to quash and the paragraphs of the indictment accurately reflect the findings of the grand jury (as is presumed), *Arbetter v. State*, 79 Tex.Crim.R. 487, 186 S.W. 769 (1916), then the allegation that the exact nature of the instrument was unknown is sufficient, even in light of a motion to quash. *McIver v. State*, 555 S.W.2d 755 (Tex.Crim.App.1977). *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Crim.App.1974). We overrule appellant's second ground of error.

■ Moreover, allegations that an instrument or exact description of an instrument is "unknown to the grand jury" does not render an indictment fundamentally de-

fective. Fundamental defects are those which fail to state an offense against the State of Texas, which is not the case in appellant's indictment. We also overrule appellant's third ground of error.

Finally, the appellant attacks the sufficiency of the evidence to prove that the exact description of the instrument was "unknown to the grand jury." Failure to state the manner and means used in the commission of a crime is not in and of itself fundamental error; however, once it has been alleged, it must be proven just as any other allegation. The fact that the means is alleged to be "unknown to the grand jury" is not an exception. If an indictment contains this type of an allegation, the State must prove that the grand jury did not know, and through the exercise of reasonable diligence could not have known the exact weapon or means used in the commission of the offense. *McIver, supra.*

In the present case, the appellant contends that the proof offered at trial shows that the grand jury either knew or should have known the exact weapon used in the commission of this offense. In support of his argument, appellant contends that the weapon used in the murder was introduced at trial. However, although three weapons were introduced "for demonstrative purposes only", the state did not claim that any of these were the murder weapon. Moreover, each of the witnesses through which these weapons were introduced testified that they were "similar to a knife carried by appellant." We believe this evidence did not refute the allegation in the indictment that the exact description of the weapon was unknown to the grand jury.

Moreover, the State introduced the testimony of district attorney Jim Maple who testified that he presented the evidence to the grand jury which was gathered by his office, the police department, and the medical examiner. He also testified that he did not present the grand jury with any evidence as to the exact description of the murder weapon, but only with

the conclusions of the medical examiner, which, as reflected by the face of the autopsy report, state that the deceased died of stab wounds to the chest. Even if the state did introduce the entire text of the medical examiner's report, which makes reference to "a knife" and "knife wounds," a thorough reading of that report indicates that this was used only to reflect the basic type of wound made. Moreover, we do not believe that this report, when read in its entirety and together with the other testimony, raised a duty of the grand jury to further inquire. The condition of the deceased's body was severely decomposed. When he was found, there were maggots and other parasites throughout the body cavities and in the "stab wounds." Although the report may have referred to "a knife", or "knife wound," we believe, that when coupled with the condition of the body and the D.A.'s testimony the weapon used could not be determined, the jury could easily have concluded that the term was being used as a generic term for a sharp cutting blade or tool, such as a knife, scalpel, letter opener, etc. Therefore, we hold that this evidence, when viewed in the context in which the statements were made, was not sufficient to show that the grand jury knew or should have known that the instrument used in the murder was a knife. Appellant's fourth ground of error is overruled.

In ground of error five, appellant contends that the trial court erred in overruling appellant's motion to suppress evidence that was seized as a result of the police search of the impounded Oldsmobile Omega. Appellant properly filed a motion to suppress this evidence which was overruled by the trial court.

The initial question, prior to reaching the merits of this ground of error, is whether or not appellant has the necessary standing to contest the validity of the search of the deceased's car. The question of standing involves two inquiries: (1) whether the appellant has alleged "injury in fact" and, (2) whether appellant is asserting his own legal right or interest, or is

asserting or basing his claim on the rights of a third party. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). To determine this second point, the appellant must show he has a legal right or interest or "reasonable expectation of privacy" in the area searched or the items seized. In determining whether the defendant's subjective expectation is reasonable, one consideration is whether or not the expectation is one society is willing to recognize. *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Certainly, one wrongfully on the premises of another cannot complain or suppress evidence which is obtained as a result of searching those premises.

Although appellant claims that he was the victim or target of the illegal search, that is not dispositive. *Rakas, supra*. In fact, the *Rakas* court held that "a person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third parties premises or property has not had his Fourth Amendment rights infringed." Id. at 134, 99 S.Ct. at 425. See also *Alderman v. U.S.*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). We believe appellant's subjective expectation of privacy in the interior of the automobile, which he stole from his murder victim, is not one society is willing to recognize as reasonable. Therefore, appellant lacks the necessary standing to contest the validity of the search.

Appellant's fifth ground of error is overruled.

In his sixth ground of error, appellant contends the trial court erred in allowing the admission into evidence of various items which had belonged to the deceased without requiring the State to establish that the proper chain of custody had been maintained. The appellant complains of the admission of State's exhibit 29 which included the deceased's billfold, his eyeglass holder, his credit cards, his driver's license, various personal papers, and two sets of keys.

Although a showing of chain of custody is required where there are routine or generally unidentifiable or undistinguishable scientific tests or analyses, it is not an issue where the items introduced are easily and readily identifiable. *Hammett v. State*, 578 S.W.2d 699 (Tex.Crim.App. 1979); *Atkins v. State*, 515 S.W.2d 904 (Tex.Crim.App.1974). Certainly, no chain of custody need be established where the items, such as the ones in the case at bar, are readily identifiable and distinct in character and nature. The items were all identified at trial by Davis's relatives who testified that they had belonged to the deceased.

Appellant's sixth ground of error is overruled.

In appellant's seventh ground of error, he contends the trial court erred in receiving into evidence prejudicial hearsay testimony on the identification of the victim in the autopsy report. Autopsy reports are admissible when the necessary predicate which establishes their authenticity as business records under Article 3737e, or Tex.Code of Crim.Pro.Ann. art. 49.25 (Vernon 1967) is laid. See, *Viser v. State*, 396 S.W.2d 867 (Tex.Crim.App.1965). The identification of the deceased was made by W.A. Chaloupka, a relative who found his body at Davis' home in Pearland. This was sufficient identification for the admission of the autopsy report reciting that identification.

Appellant's seventh ground of error is overruled.

Appellant in his eighth ground of error, challenges the admission into evidence of certain photographs taken of the deceased prior to the autopsy. Appellant argues that the photographs were highly prejudicial and unnecessary, and were merely intended to inflame and incite the jury.

Dr. Espinola testified that he had personally taken the photographs prior to the performance of the autopsy and that they fairly and accurately depicted the body of the deceased. This sufficed as proper authentication. Moreover, the pho-

tographs were relevant to show the nature and extent of the victim's wounds, and the decomposed condition of the body when found.

The admission of photographs rests largely in the discretion of the trial judge, who must determine whether the photos serve a proper purpose in the jury's enlightenment. *Terry v. State*, 491 S.W.2d 161 (Tex.Crim.App.1973). The trial court's action will not be disturbed in t'ie absence of a showing of an abuse of discretion. *Terry, supra.*

The pictures introduced in the case at bar were of the deceased when he was discovered in Pearland. As in *Terry*, the photos, although gruesome, were admissible as they corroborated the verbal description of the body and brought visibly to the jury the details of the crime by showing the location, nature, and extent of the wounds to the body of the deceased. *Terry, supra* at 163. In *Hall v. State*, 619 S.W.2d 156 (Tex.Crim.App.1980), the Court of Criminal Appeals stated that if a verbal description of the body and the scene is admissible, a photograph depicting the same is admissible, and the gruesomeness of them does not render them inadmissible. See also, *Harrington v. State*, 547 S.W.2d 621 (Tex.Crim.App.1977).

We do not believe that the court abused its discretion by admitting these photographs into evidence. They were not post-autopsy photos, as in *Terry, supra*, and only depicted the nature and extent of the wounds and the condition of the body. Simply because the photos showed the jury what the body of the deceased looked like when found, even though he was partially decomposed, does not render the photos inadmissible. *Burks v. State*, 583 S.W.2d 389 (Tex.Crim.App.1979), cert. denied, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1136 (1980).

Appellant's eighth ground of error is overruled.

Appellant in ground of error nine, contends that the trial court erred in admitting, over objection, the penitentiary packets, since the predicate for their admission had not been laid pursuant to Tex.Rev.Stat. Ann. Art. 3737e.

The appellant objected to a certified copy of the pen packet under article 3737e, stating that the State had not laid the necessary predicate for their admission as business records. However, the admission of these documents is controlled by Article 3731a, Tex.Rev.Civ.Stat.Ann., which deals with the attestation and admission of official government records. The predicate for their admission on that basis was established. Moreover, since the objection made at time of trial did not reach the issue of the admissibility of the pen packet pursuant to article 3731a, appellant has preserved nothing for review under that provision.

As to his second objection, by trial counsel, to the pen packet, that it lacked the seal as required by this document over the signature of S.O. Woods, Jr., Article 3731a requires only that the officer having legal custody of the record attest to it. There is no requirement of a seal. See *Brewer v. State*, 500 S.W.2d 149 (Tex.Crim. App.1973).

Appellant's ninth ground of error is overruled.

The judgment of the trial court is affirmed.