**Pareshkumar Manabhai PATEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–91–00744–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 6, 1993.

Discretionary Review Refused Sept. 15, 1993.

Michael Ramsey, Colin B. Amann, Ramsey & Tyson, Houston, for appellant.

John B. Holmes, Jr., Ernest Davila, Lyn McClellan, Karen Morris, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION

O'CONNOR, Justice.

Pareshkumar Manabhai Patel, the appellant, was found guilty of murder by a jury and sentenced to 75–years confinement in prison. We affirm.

### Fact summary

The appellant did not testify at his trial. The story of the appellant's murder of Ray McIntyre, mostly circumstantial evidence, at trial is as follows: The appellant went to Mike Calvert Toyota pretending to be a customer interested in buying a new car. Ray McIntyre, a salesperson, attended the appellant and got keys to a 1990 Toyota Camry for the appellant to test drive. During the test drive, the appellant forced McIntyre from the car and led him to an empty field. The appellant fatally shot McIntyre, left him in the field, and drove away in the Toyota.

The day after the murder, the appellant drove two of his friends around Houston in the stolen vehicle. He told them he had borrowed the car from a friend. A few days later, the appellant left Houston and drove to College Station where he had an apartment house. There, in the parking lot of the apartment house next door, he stole a license plate that he put on the car. He then drove to Connecticut to visit a friend.

From Connecticut, he drove to South Hackensack, New Jersey, where he evidently ran out of money. In South Hackensack, he walked into a police station and claimed he had been robbed at gunpoint by a black male in the parking lot of the Airport Motel. He said the robber took his gold chain and wallet, and he had no money to pay for a room. Under the victim assistance program, the police provided him with a room at the motel. While checking the appellant in the hotel, the room clerk told one of the officers the appellant had tried to check in earlier, but his credit card had been rejected. The clerk had confiscated the card and cut it in two.

The next day, the chief of police and one of his officers went to the motel. First, they ran a check on the license plate, which

showed the car was not stolen.[1] Then they ran a check on the vehicle identification number and learned the car had been reported stolen in Houston and was associated with a missing person. They arrested the appellant for possession of a stolen vehicle, and the police made an inventory of the contents of the Toyota. The pistol used to kill McIntyre was found in the car.

## 1. Inventory search

In the appellant's points of error one through seven, he raises several federal and state constitutional challenges to the search of the stolen Toyota and the court's failure to grant the motion to suppress. These allegations include: no evidence of a standard police department policy regulating the opening of closed containers; no complete listing of the items found in the vehicle; the lack of a police department inventory policy; and the police officer who prepared the list of items seized was not present during the search.

 We must determine whether the appellant has a legal right or interest or "reasonable expectation of privacy" in the area searched or the items seized. *Edlund v. State*, 677 S.W.2d 204, 210 (Tex.App.—Houston [1st Dist.] 1984, no pet.). To determine if the appellant's subjective expectation of privacy is reasonable, we must consider whether it is one society is willing to recognize. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (a defendant had no protectible interest in the telephone number he dialed, only in the contents of the conversation); *Jackson v. State*, 745 S.W.2d 4, 8 (Tex.Crim.App.1988) (the defendant had no protectible interest in the contents of a car he stole from the murder victim); *Edlund*, 677 S.W.2d at 210 (the defendant had no protectible interest in the contents of a car he stole from the murder victim). In *Jackson*, the Court of Criminal Appeals wrote:

> Simply put, any actual expectation of privacy the appellant may have manifested in the stolen vehicle is not "one soci-

ety is willing to recognize as 'reasonable.'" ... We are convinced that the *stare decisis* of this Court is applicable in the case *sub judice* and appellant lacked standing to contest the search and seizure of the stolen vehicle which he gained possession of only by reason of his criminal conduct.

*Jackson*, 745 S.W.2d at 8; *see also Edlund*, 677 S.W.2d at 210. We hold the appellant did not have a reasonable expectation of privacy and thus lacked standing to contest the search of the stolen automobile.

The appellant contends even if the police could search the car, they were not free to open the container in which they found the gun. To support this argument, the appellant cites *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). This case is distinguishable from both *Wells* and *Bertine*, because the automobile subject to the inventory search in those cases was not stolen. Here, as in *Jackson, Bodde [v. State*, 568 S.W.2d 344 (Tex.Crim.App. 1978)], and *Edlund*, the automobile was stolen. In both *Wells* and *Bertine*, the person driving the car was arrested for driving while intoxicated, and the search of the car was incidental to the arrest.

The law is clear in New Jersey, as well as in Texas, that stolen property may be seized and impounded for the true owner. *See* N.J.Stat.Ann. § 39:5–47 (West 1990); *New Jersey v. De Marco*, 384 A.2d 1113, 1116 (N.J.Super.Ct.App.Div.1978); *Gandy v. State*, 835 S.W.2d 238, 243 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). The police could not just abandon the car in the parking lot of the motel.

The appellant argues the State cannot raise the issue of his standing on appeal, because it did not raise it at trial. First, the State received a favorable ruling from the trial court before it had the opportunity to present a reason to overrule the motion to suppress. After the evidence was introduced and after the appellant argued reasons to suppress the items seized during

---

1. The owner of the car in College Station did not report her license plate had been stolen

because she just assumed it had fallen off while she was driving.

the search, the trial court overruled the motion and specifically said she did not want to hear from the State. Thus, the State was not required to give reasons to support the trial court's favorable ruling.

Second, the State may raise standing on appeal even when it did not raise it at the trial. It can, however, more easily be resolved under the substantive fourth amendment doctrine. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court was confronted with a standing problem, and they wrote:

> But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing.... Analyzed in these terms, the question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.... But by frankly recognizing that this aspect of the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing, we think the decision of this issue will rest on sounder logical reasoning.

*Id.* 439 U.S. at 139–40, 99 S.Ct. at 428–29. In *Wilson v. State*, 692 S.W.2d 661 (Tex. Crim.App.1985) (op. on reh'g), the court held the existence of a legitimate privacy interest is an element of the defendant's fourth amendment claim, which he has the burden of proving. *Id.* at 669. Here, the appellant stole the car, and he did not meet his burden of proving he had a reasonable expectation of privacy in the contents of the stolen car. We need not specifically address the "theoretical" concept of standing, because he did not prove his more "logical" fourth amendment protections had been infringed upon.

We overrule points of error one through seven.

## 2. Rule of optional completeness

In point of error eight, the appellant argues the trial court erred when it refused to admit part of a document offered under the rule of optional completeness.

■ The rule of optional completeness—which permits a party to introduce the entire writing after the other party has introduced only part of it—is meant to guard against the confusion, distortion, or false impression that can arise from the introduction of part of a writing out of context. *Livingston v. State*, 739 S.W.2d 311, 331 (Tex.Crim.App.1987); TEX.R.CRIM.EVID. 107.[2] The purpose of the rule is to "reduce the possibility of the fact finder receiving a false impression from hearing the evidence of only part of an act." *Kinnamon v. State*, 791 S.W.2d 84, 101 (Tex.Crim.App. 1990).

■ In *Grunsfeld v. State*, 813 S.W.2d 158, 163 (Tex.App.—Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex.Crim.App.1992), the court held the trial court erred when it admitted the police report into evidence after the police officer consulted it for an address; the court, however, found the error was harmless. Here, the writing was a memorandum from the Bergen County prosecutor's office. The parties were trying to determine why the appellant's credit card was rejected at the Airport Motel in New Jersey, which led to the appellant's asking for assistance from the police.

---

**2.** The rule of optional completeness states: "When a part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence. 'Writing or recorded statements' includes depositions." TEX.R.CRIM. EVID. 107.

The officer on the stand thought the card was confiscated because it had expired. Upon viewing the actual card, he realized it had not expired. At the appellant's request, the officer was called back to the stand to clear up the confusion. He was handed the memorandum and asked to read the first paragraph of page four to himself. After reviewing the document, the officer conceded the credit card was refused because the card was in the appellant's father's name.

The State called another officer to testify. Again, the officer was referred to a particular paragraph in the document and asked to read it to himself. The testimony went as follows:

A. Read it to myself?

Q. To yourself. And that paragraph refers, does it not, to Mr. Patel giving a clerk a credit card and being denied the use of that credit card.

A. That's correct.

Q. Because, well, for the reason stated, and is that, in that report is that what Mr. Patel had told the investigators as opposed to what some other clerk may have told the investigators. Bottom of page three if you could just read that to yourself. Is this referring to what Mr. Patel told the investigators?

A. That's correct.

Q. And not what some credit card company told the investigators?

A. I'm sorry. I couldn't hear you.

Q. Does this refer to what Mr. Patel told the investigator as opposed to what some credit card operator told the investigators?

A. Its (sic) what Mr. Patel told the investigators.

Upon cross-examination of this witness, the appellant wanted to question the officer about another part of the memorandum pertaining to the appellant's testimony that he had purchased the Toyota for $6,000 from a man named Mike or Miguel. The court did not allow the appellant to pursue this line of questioning, and the appellant asserts, under the rule of optional completeness, the testimony should have been allowed.

The appellant wanted the document introduced to explain how he obtained the vehicle, but the earlier references to the memorandum were used to establish why his credit card was rejected. The two statements are not "on the same subject" as required for the rule of optional completeness. *Grunsfeld,* 813 S.W.2d at 163. In *Wintters v. State,* 616 S.W.2d 197, 202 (Tex.Crim.App. [Panel Op.] 1981), the court, when questioning the validity of entering an entire police offense report, decided it was "permissible for the State to offer into evidence those portions of the report on the same subject."

The testimony the appellant wanted introduced was not necessary to explain or make the other evidence elicited from the report fully understood.

We overrule point of error eight and affirm the judgment.