

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00133-CR
No. 02-18-00134-CR
No. 02-18-00135-CR

_____

JAVIER ANGEL LERMA, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court Nos. 1481084D, 1481085D, 1481032D

_____

Before Pittman, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

The jury convicted Appellant Javier Angel Lerma of three offenses: possession of less than one gram of methamphetamine, evading arrest or detention with a vehicle, and unlawful use of a motor vehicle. *See* Tex. Health & Safety Code Ann. § 481.115(b); Tex. Penal Code Ann. §§ 31.07, 38.04(b)(2)(a). In two points, he complains that the trial court abused its discretion by denying his motion to suppress and that the evidence is insufficient to support his convictions. We affirm.

## BACKGROUND

After a Fort Worth marshal stopped the truck Appellant was driving, Appellant drove away suddenly, fleeing the scene. Appellant's truck collided with a pole, and Appellant and the truck's only other passenger fled on foot. After police officers apprehended both Appellant and the passenger, the officers discovered that several weeks before, the truck Appellant was driving had been reported stolen by Maria Ramirez Chairez-Ortiz. The officers who inventoried the truck before impounding it found two cell phones and a small amount of methamphetamine on the driver's side. Shortly before trial, a Fort Worth police detective obtained a warrant for the content of the cell phones. Text messages recovered from one of the phones showed that Appellant had arranged a drug buy on the morning of his arrest.

The State charged Appellant with evading arrest or detention using a vehicle, unauthorized use of a motor vehicle, and possession of less than one gram of methamphetamine, and the jury convicted him of all three offenses. He now appeals.

2

I.      **Standards of Review**

A.      **Motions to Suppress**

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). Even if the trial court gave the wrong reason for its ruling, we must uphold the ruling if it is both supported by the record and correct under any applicable legal theory. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

B.      **Sufficiency of the Evidence**

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond

a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

To determine whether the State has met its *Jackson* burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by the hypothetically correct jury charge to the evidence adduced at trial. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Jenkins*, 493 S.W.3d at 599. The "law as authorized by the indictment" means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## II. Appellant Had No Expectation of Privacy in a Stolen Vehicle or Its Contents.

In his first point, Appellant contends that the trial court abused its discretion in denying his motion to suppress evidence resulting from the search of cell phones recovered from the stolen truck. We disagree.

We agree with the State that Appellant had no expectation of privacy in the truck or in its contents, including the cell phones or the contents of the cell phones. *See Hughes v. State*, 897 S.W.2d 285, 305 (Tex. Crim. App. 1994) (stating that any expectation of privacy the defendant had in the vehicle he had stolen was not reasonable); *Jackson v. State*, 745 S.W.2d 4, 8 (Tex. Crim. App. 1988) ("[A]ppellant lacked standing to contest the search and seizure of the stolen vehicle which he gained possession of only by reason of his criminal conduct."); *Patel v. State*, 856 S.W.2d 486, 488 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (defendant had no expectation of privacy in a stolen car or its contents, including a container holding a gun); *see also United States v. Stamper*, 91 Fed. App'x 445, 456 (6th Cir. 2004) (stating appellant had no expectation of privacy in disposable camera found in stolen vehicle); *United States v. Hood*, No. 1:17-CR-421-SCJ-LTW, 2018 WL 7286179, at *6 (N.D. Ga. Oct. 25, 2018) (finding that defendant had not shown any expectation of privacy in contents of a stolen car, including a cell phone), *report and recommendation adopted*, No. 1:17-CR-421-SCJ, 2019 WL 169144 (N.D. Ga. Jan. 11, 2019). *Cf. Martinez v. State*, No. 08-14-00130-CR, 2016 WL 4447660, at *4 (Tex. App.—El Paso Aug. 24, 2016, pet. ref'd) (holding defendant had no

expectation of privacy in his cell phone he left at a murder scene; "[b]y leaving his cell phone in the Flores' residence, a place he had no right to be in the first place, he lost any legitimate expectation of privacy"). At the suppression hearing, the trial court heard undisputed evidence that the truck from which Appellant fled and in which he left the cell phones had been stolen. Accordingly, the trial court did not abuse its discretion in denying the motion to suppress. We overrule Appellant's first issue.

## III. Sufficient Evidence Established Appellant's Evading Arrest or Detention and His Unauthorized Use of a Vehicle.

In his second point, Appellant challenges the sufficiency of the evidence to support the three convictions.

### A. Sufficient Evidence Established Appellant Evaded Arrest or Detention.

To prove that Appellant evaded arrest or detention with a vehicle, the State had to prove beyond a reasonable doubt that Appellant (1) intentionally fled (2) from a person who was a peace officer and (3) who Appellant knew was a peace officer; (4) that the peace officer was attempting to detain or arrest Appellant; (5) that the attempted detention or arrest was lawful; and (6) that Appellant used a vehicle in his flight. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A); *Rodriguez v. State*, 578 S.W.2d 419, 419 (Tex. Crim. App. 1979).

Fort Worth Marshal Jaime Arambula testified that on the morning of December 21, 2016, he was on patrol sitting at the intersection of Berry and the Interstate 35 frontage road when he noticed a pickup truck with an expired tag. When

the light turned green, Marshal Arambula initiated a traffic stop. This evidence supported a finding that the stop was lawful. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (stating that law enforcement officials are free to detain a person for an actual traffic violation); *Chambers v. State*, No. 06-18-00090-CR, 2019 WL 1412230, at *4 (Tex. App.—Texarkana Mar. 29, 2019, no pet. h.) ("Failure to properly display a license plate on a vehicle is a traffic violation and can constitute reasonable suspicion for an officer to make a traffic stop.").

Marshal Arambula stated that he turned on the overhead lights on his marked patrol car to stop the truck, and the truck pulled into a parking lot and stopped. The truck had two occupants. Marshal Arambula parked his patrol car behind the truck and then walked toward the truck. He was wearing his uniform at the time. Marshal Arambula could see Appellant's face in the driver's side mirror; Appellant was looking at Marshal Arambula, making eye contact. Marshal Arambula could see Appellant's face clearly in the mirror. When Marshal Arambula reached approximately the driver's back tire, the truck "took off" and drove eastbound on Berry.

Marshal Arambula returned to his patrol car, notified Fort Worth police dispatch to request assistance, and pursued the truck. He kept his car's overhead lights on during the chase. Appellant drove quickly; Marshal Arambula testified that the two vehicles "were going from 60 to 70 miles per hour down Berry." In his flight, Appellant drove through a red light and at one point drove on the wrong side of the road. Marshal Arambula's pursuit of the truck ended when Appellant collided with a pole. Appellant

7

then fled the scene on foot; Marshal Arambula arrived in time to see him jumping over a fence. The truck's passenger was running across the street. Appellant was apprehended a short time later by other police officers who had responded to Marshal Arambula's request for backup. When the officers brought Appellant back to the scene, Marshal Arambula identified him. On cross-examination, Marshal Arambula acknowledged that he had never been asked to a do a photo lineup for identifying Appellant and that he saw Appellant's face only in the side mirror, never directly.

This evidence is sufficient to support a finding beyond a reasonable doubt that Appellant intentionally fled from Marshal Arambula, a peace officer; that Appellant knew he was a peace officer; that Marshal Arambula was attempting to detain Appellant; and that Appellant used a vehicle in his flight. Accordingly, the evidence was sufficient to sustain Appellant's conviction for the offense of evading detention with a vehicle. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A).

We overrule this part of Appellant's second point.

### B. Sufficient Evidence Established Appellant's Unauthorized Use of a Vehicle.

To establish that Appellant committed unauthorized use of a vehicle as alleged in the indictment, the State had to prove that Appellant (1) intentionally (2) operated (3) a motor-propelled vehicle (4) without Chairez-Ortiz's effective consent. *See id.* §§ 31.01 (defining "effective consent" for purposes of the chapter to include consent

8

by a person legally authorized to act for the owner), 31.07 (setting out the offense of unauthorized use of a motor vehicle).

As noted above, Marshal Arambula testified that he reached the truck in time to see Appellant jumping over a nearby fence. The truck's passenger—Appellant's brother, Redolfo Segovia—also fled on foot; Marshal Arambula chased after him. Fort Worth Police Officer Jesse Contreras and Fort Worth Police Officer Alfredo Dominguez arrived in time to see Segovia running across the road, and they joined Marshal Arambula in pursuing Segovia. The officers caught up to Segovia and took him into custody. Other officers apprehended Appellant two or three blocks away and brought him back to the crash site where Marshal Arambula identified him as the truck's driver.

Officer Contreras ran the truck's vehicle identification number and determined that it had been reported stolen by Chairez-Ortiz. Chairez-Ortiz testified that she reported the truck stolen on December 12, 2016. The truck belonged to her son, but he had left it in her possession about two months earlier. *See id.* § 1.07 (defining "owner" for purposes of the Penal Code to include one who has title to or possession of property). She did not give Appellant or anyone else permission to drive the truck. *See id.* § 31.01.

No evidence indicated that Appellant had permission or believed he had permission to drive the truck. Appellant's brief focuses on that fact that the State's only evidence that he was driving was Marshal Arambula's testimony. As we address below, however, the jury could believe Marshal Arambula's eyewitness testimony.

9

This evidence was sufficient for a rational factfinder to find beyond a reasonable doubt that Appellant drove the truck, a motor-propelled vehicle, and that he did so without the consent of the owner or a person legally authorized to act for the owner. *See id.* § 31.07; *McQueen v. State*, 781 S.W.2d 600, 604 (Tex. Crim. App. 1989); *Bragdon v. State*, Nos. 02-10-00295-CR, 02-10-00296-CR, 02-10-00297-CR, 2011 WL 2518896, at *2 (Tex. App.—Fort Worth June 23, 2011, no pet.) (mem. op., not designated for publication).

We overrule this part of Appellant's second point.

## IV. Sufficient Evidence Established Appellant's Conviction for Possession.

To establish that Appellant possessed less than one gram of methamphetamine, the State was required to prove that Appellant (1) intentionally or knowingly (2) possessed (3) methamphetamine (4) in an amount less than one gram. *See* Tex. Health & Safety Code Ann. § 481.115(b).

Officer Contreras testified that after confirming the truck was stolen, he inventoried its contents. On the driver's seat, he found a glove, and inside the glove he found a piece of plastic containing a white powdery substance. He also found two cell phones on the driver-side floorboard.

The trial court admitted stipulations, read to the jury, that a Fort Worth Police Department forensic scientist tested the white powdery substance and that, if the forensic scientist testified, she would testify truthfully that the substance was 0.337 gram of methamphetamine.

10

Detective Ha Nguyen of the Fort Worth Police Department's digital forensics unit began working on obtaining data from the cell phones around January 23, 2018, about a week before trial. Both of the phones were registered to Appellant. From each of the phones, Detective Nguyen recovered photographs, including photographs of Appellant. At trial, the State admitted one photo of Appellant from each phone.

Detective Nguyen also recovered text messages sent to and from one of the phones. Some of those texts were read to the jury. Specifically, the jury heard an exchange with someone named "Joe." The message exchange, which began around 1:00 am on December 21, 2016, arranged for Appellant to meet with Joe around 7:30 that morning to buy drugs. Joe texted Appellant to "[b]e at the spot at 7:30 then hit me when you[']r[e] there." In the texts, Appellant and Joe did not name which drug Appellant wanted to buy, but district attorney investigator Bruce Blaisdell, formerly of the Fort Worth Police narcotics unit, told the jury that the terms they used to describe amounts were consistent with several drugs, including methamphetamine, cocaine, and heroin. Blaisdell also told the jury that Appellant and Joe discussed a price for the buy and that the price they discussed was consistent with the cost of methamphetamine but not cocaine or heroin. In the texts, Appellant and Joe discussed Appellant buying around 17 grams of the drug.

Around 7:10 a.m. on December 21, a text sent from Appellant's phone told Joe, "I'm at the spot." Marshal Arambula's encounter with Appellant and his brother began about twenty minutes later, around 7:30 a.m. On cross-examination, Appellant's

11

attorney asked Blaisdell about the failure to find 17 grams in the truck and whether that indicated that Appellant had not met with Joe that morning. Blaisdell, however, noted that Appellant and his brother had the opportunity to toss the drugs while fleeing, either from the truck or while running away from the truck, so he could not opine as to whether the deal had been completed.

To summarize, the State put on evidence that Appellant had arranged to buy methamphetamine around 7:30 am on December 21, 2016; that Appellant had texted the seller around 7:10 a.m. that morning claiming to be at their arranged meetup location and that Marshal Arambula's encounter with Appellant began about twenty minutes later. The State further put on evidence from which the jury could find that Appellant was driving a truck in which less than one ounce of methamphetamine was found and that the methamphetamine was found on the driver's side of the truck. This evidence was sufficient for rational factfinder to find beyond a reasonable doubt that Appellant intentionally or knowingly possessed less than one gram of methamphetamine. *See id.*; *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Appellant argues that "without the corroboration of the cell phone downloads," which he argued in his first point should have been suppressed, "there is only Arambula's eyewitness identification." He points to what he sees as several problems with Marshal Arambula's testimony. First, Marshal Arambula saw Appellant's face only in the side-view mirror. Second, their only encounter was "in very low light just after sun rise." Third, Appellant and his brother bear a strong facial resemblance to one

another. Fourth, while Marshal Arambula was approaching the truck, he not only was looking at the driver in the side mirror, he "was also trying to ascertain what the passenger was doing, describing him as fidgeting and reaching around the cab of the truck."

Appellant additionally points to parts of Marshal Arambula's testimony that he contends make the testimony unreliable: that Marshal Arambula testified that he stopped Appellant around "7:30, 7:35 [a.m.]" but did not make his call to dispatch until 7:43 a.m.; that it would be strange for the occupants of the truck to still be at the scene of the crash if Marshal Arambula did not arrive at the crash site until forty-five seconds after the crash as he stated at trial; and that Appellant's brother stayed in the car long enough to still be near it by the time Marshal Arambula arrived yet he left Appellant's cell phones in plain view in the vehicle.

Appellant acknowledges that these are all fact issues that the jury decided against him, but he argues that "legally speaking, without the cell phone records there is no legal basis to conclude that the Appellant was connected to the [meth]amphetamine other than the location of the glove which could have been anywhere in the vehicle or even in the possession of [Appellant's brother] when the vehicle crashed."

Appellant's arguments are unavailing. As he noted, the jury had the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. The jury is free to accept or reject any or all evidence

13

of either party. *Hernandez v. State*, 161 S.W.3d 491, 500 & n.28 (Tex. Crim. App. 2005); *Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the jury's. *Queeman*, 520 S.W.3d at 622. Arambula identified Appellant at trial as the driver of the truck, and the jury was free to believe that Marshal Arambula saw Appellant's face in the side-view mirror well enough to identify him. And because we have upheld the trial court's denial of the motion to suppress, the jury was free to consider the evidence of the text messages as well.

We overrule the remainder of Appellant's second point.

## CONCLUSION

Having overruled Appellant's two points, we affirm the trial court's judgments.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 27, 2019

14