Thermon Leon WHITLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–81–0040–CR.

Court of Appeals of Texas, Tyler.

May 20, 1982.

John R. Heath, Nacogdoches, for appellant.

Herbert B. Hancock, District Atty., Nacogdoches, for appellee.

SUMMERS, Chief Justice.

Appellant was convicted by a jury of the second degree felony offense of injury to a child. The jury assessed his punishment at twenty years in the Texas Department of Corrections. Appellant raises six grounds of error on appeal.

Connie Louann Whitley, a thirty-seven month old female child, was brought to Nacogdoches Medical Center Hospital about midnight on March 17, 1980, by her father, Thermon Leon Whitley, appellant, and her stepmother, who were traveling through Nacogdoches enroute from Arkansas to the Houston area.

The child was covered with bruises. She was not breathing, had no heart beat, and had fixed and dilated pupils. Medical personnel attempted to revive her and had her transferred to Houston by helicopter although she appeared to have died. She was pronounced dead on arrival in Houston at 6:18 a. m., March 18, 1980.

The bruises which covered the child were of different ages, some recent, some more remote. Retinal hemorrhages, generally caused by blunt trauma, were recently caused. The child's death resulted from a subdural hematoma or hemorrhage caused by blunt force trauma to the head.

Appellant, in a written confession, introduced into evidence as State's Exhibit No. 12, admitted that both he and his wife struck the child numerous times during the trip from Arkansas which ended with their arrest in Nacogdoches on the 18th of March, 1980. Officers confirmed that the family, which also included a younger child, was traveling through Nacogdoches in a pickup truck. Dorothy Johnson, mother of the deceased child, testified that the child had been with her father for a one-month visit and that she had no bruises when he got custody for the visit which terminated in her death.

In his first ground of error, appellant complains that the trial court committed reversible error in permitting the prosecutor to introduce State's Exhibit No. 13, a colored post-autopsy photograph "of the inside of the skull looking upward from the inside toward the lining of the skull." Appellant contends it served only one purpose that being to inflame the minds of the jury. We do not agree.

The testimony of the pathologist, Dr. Robert Bucklin, pinpoints the cause of

death to be a subdural hematoma caused by blunt force trauma. In describing the photograph Dr. Bucklin stated:

This is a photo of the inside of the skull looking at the part which is removed in order to expose the brain. And the view of this is looking upward from the inside toward the lining of the skull. On the left side it shows a large area of hemorrhage which is the subdural lot ... caused by a direct injury to the head.

Appellant cites *Terry v. State*, 491 S.W.2d 161 (Tex.Cr.App.1973) as controlling authority. He advances the position that what one sees is what was done by the person who performed the autopsy rather than what was alleged to have been done by appellant. We find that *Terry* is distinguishable from the case at bar. Although the evidence offered is an autopsy photograph, it clearly reveals the cause of this child's death and corroborates the doctor's verbal description of the injury. In contrast with the medical testimony in *Terry*, Dr. Bucklin was precise and explicit in his verbal description of the injury and the procedure involved in revealing the subdural clot. The applicable part of the doctor's testimony follows:

Q All right sir. And was there any evidence of injury to the external portion of her skull that you could determine?

A Yes. There was massive bruising, hemorrhage of the tissues below the skin in the front part of the scalp and extending up to the top of the head. The dura, which is a very heavy membrane attached to the inner part of the skull, showed hemorrhage between the dura and the brain and then what we call a subdural location. This is on the left side and it consisted of about twenty-five cc, that's about an ounce of fluid and clotted blood. This hemorrhage extended toward the back and included about another 25 cc or one ounce of—

\*    \*    \*    \*    \*    \*

Q So the external features of the skull between the scalp and the skull were part of the injury that you previously described as—was there any injury between the scalp and the skull itself that you could detect?

A Yes.

Q Okay. And that has—you have previously described and you are now after opening the—for lack of a better word, the head—are now referring to the inside of the skull itself, is that correct?

A That's correct. Yes sir.

Q Okay. Thank you. Go ahead.

A This hemorrhage was primarily on the left but did extend backward between the cerebellum and the left side of the brain. So there was a total of about two ounces of blood in the cranial cavity. And again this indicated hemorrhage. There was slight hemorrhage over the surfaces of the brain stem, the cerebellum, but I didn't find any bruises directly on the brain itself or on the brain stem.

\*    \*    \*    \*    \*    \*

Q Okay. Once the skull was removed and where you could look at the brain could you describe for us what you saw there? Just looking straight onto it before the brain itself was removed.

A Okay. There was hemorrhage on the left side between the dura, which is the membrane attached to the skull, and the brain itself. There was some red discoloration and hemorrhage on the surface of the brain primarily over the brain stem.

\*    \*    \*    \*    \*    \*

Q Doctor when you talk about the stem, what in terms that I could understand—what are we talking about?

A The brain stem is the lowermost part of the brain, the part that joins the spinal cord. It consists of the cerebellum, the pons, and the medulla. These are the three main parts which make up the brain stem.

Q  Doctor, how do you get to that area to make that examination in the autopsy itself?

A  It's done by removing the bony part of the skull, exposing the brain and simply lifting the brain up in order to see what is below the topmost part.

\*  \*  \*  \*  \*  \*

Q  I show you what's been marked as State's Exhibit Number 13, Doctor, and ask you if you will look at that exhibit and tell us whether or not you recognize that exhibit.

A  Yes I do.

Q  Does that accurately and correctly depict the scene as you recall it back on the 18th day of March, 1980?

A  It does.

Q  Thank you sir. We would offer State's Exhibit Number 13 as evidence, if it please the court.

\*  \*  \*  \*  \*  \*

Q  Doctor this exhibit—could you tell us what that is?

A  This is a photo of the inside of the skull looking at the part which is removed in order to expose the brain. And the view of this is looking upward from the inside toward the lining of the skull. On the left hand side it shows a large area of hemorrhage which is the subdural clot that I have been describing.

Q  All right. Doctor would you tell us what caused this clot or this area on the brain itself?

A  It was caused by a direct injury to the head.

Q  Okay. To the head of Connie, the person that we're talking to in this case, is that correct?

A  Yes. Connie Whitley.

Q  All right. On which side of the head was the injury and the clot that we are referring to at this time?

A  The left side.

Q  All right. Doctor I believe you have described in detail the other injuries to the brain itself. Do you have an opinion as to the cause of the death of this child at this time?

A  Yes.

A  It was my opinion that death was a result of a subdural hematoma or hemorrhage caused by blunt force trauma.

Q  All right. To the head area itself, is that correct?

A  Yes Sir.

■ The Court of Criminal Appeals in *Burks v. State*, 583 S.W.2d 389 (Tex.Cr.App. 1979) stated that if a photograph was competent, material, and relevant to an issue at trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury. If a verbal description is admissible, a photograph depicting the same is admissible. *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972); *Welch v. State*, 576 S.W.2d 638 (Tex.Cr. App.1979); *Shannon v. State*, 567 S.W.2d 510 (Tex.Cr.App.1978); *Denney v. State*, 558 S.W.2d 467 (Tex.Cr.App.1977).

In *Bailey v. State*, 532 S.W.2d 316 (Tex. Cr.App.1975), the Court of Criminal Appeals held that only where the results of surgery have obfuscated the results of the crime will otherwise accurate depictions in autopsy photographs be inadmissible.

In the instant case, we do not find the photograph depicting the inside of the skull in and of itself particularly "gruesome." It was admissible to clarify the pathologist's descriptions of the cause of death. See *Williams v. State*, 604 S.W.2d 146 (Tex.Cr. App.1980). This ground of error is overruled.

■ Appellant's second ground of error contends that the trial court erred in failing to charge by distinctive submission each defensive issue raised by the testimony regarding the constitutional and statutory procedures that are prerequisites to jury consideration of a confession. We do not agree. Appellant has not raised a defensive issue which entitles him to a distinctive submission in the charge. It appears appellant contends the confession was taken pri-

or to his appearance before a magistrate for the purpose of receiving a statutory warning. The record does not bear this out. There is no evidence of any causal connection between the time taken to bring appellant before the magistrate and the confession. We feel *Cordes v. State*, 158 Tex. Cr.R. 529, 257 S.W.2d 704 (1953) is distinguishable on the facts. The charge as given adequately protected the rights of the appellant. This ground of error is overruled.

■ In his third ground of error, appellant contends the trial court erred in failing to instruct the jury in accordance with Defendant's Requested Instruction No. V, which deals with the printed warnings at the top of the confession. We disagree. We find that the court's charge is sufficient as presented. It adequately supplies the jury with the law to be used in determining whether or not the confession was voluntarily given. Appellant cites *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) in support of his position. We believe that *Brown* is distinguishable from the facts of this case. This ground of error is overruled.

■ In his next ground of error, appellant challenges the sufficiency of the evidence to warrant a conviction. The contention states that there is no evidence to corroborate the appellant's confession.

In reviewing a challenge to the sufficiency of the evidence, this court must view the evidence in the light most favorable to the jury's verdict.

Dorothy Johnson testified that Connie Louann Whitley was having a visitation period with her father at the time of her death. Furthermore, she testified that when she was picked up by Whitley there was not a bruise or mark on her body.

The nurses at the hospital testified that the child was brought to the hospital by Thermon Leon Whitley in an unconscious state around midnight on March 17, 1980. The nurses further testified when questioned about the many bruises, Whitley was evasive and unresponsive.

Also, Officer Walton testified Whitley showed no emotion and very little concern when asked what happened to the baby while they were still at the hospital.

Dr. Robert Paul Lehman testified the child was literally covered with bruises from head to toe. Her eyes were damaged, her lips were swollen, her ears had evidence of bleeding. The doctor testified that these injuries were of the type caused by a blow, blunt trauma. There was evidence, according to the doctor, that some of the bruises were caused by a belt or buckle. The doctor testified he was surprised at Whitley's reaction to the situation in that he appeared to be perturbed at being there. He did not ask the doctor any question about Connie. The doctor testified that the bruises were from twenty-four hours to thirty-six hours old, except the eye damage that was more recent in time.

Dr. Barry Roberts testified there was not an inch or two of normal skin on her body. He testified the child's most critical injury was to the head; that this injury involved a hemorrhaging of the retina which in his opinion could have been an hour or two old. He further testified some of the bruises were more and some were less than seventy-two hours old.

Dr. Robert Bucklin, Deputy Chief Medical Examiner for Harris County, Texas, testified that more than one episode of injury produced the bruises on the child. Further he testified some were quite fresh but that in his opinion none was as old as a week. He testified that the injuries were of such a nature as to have been caused by blunt force trauma, and that some implement was applied to the body to make the injuries. He testified the implement could have been a hand, a stick or something of that nature. The doctor testified that the child's liver was hemorrhaging, which reflected trauma or injury applied directly to that part of the body. The doctor stated in his opinion the cause of death was a subdural hemorrhage caused by blunt force trauma. V.T.C.A. Penal Code, § 22.04 (Injury to a child), provides in part: "(a) A person commits an offense if he intentionally, knowingly ...

engages in conduct that causes to a child who is 14 years of age or younger ... (1) serious bodily injury; ...."

The indictment, omitting the formal part, read as follows:

... in the County and State aforesaid, Thermon Leon Whitley did then and there knowingly and intentionally engage in conduct that caused serious bodily injury to Connie Whitley, a child younger than 14 years of age, by then and there striking the said child about the head and body with his hands.

The extrajudicial statement, omitting the warnings, read:

Last Friday my wife Linda, my daughter Connie, my step-son Steven, and I were walking back from the Commissary at Little Rock Air Force Base when Connie stepped out in front of a car and fell down. I got her and we went to the pickup. When we got in the pickup I slapped Connie across the side of the face with the back of my hand.

Yesterday we all left where we lived in Jacksonville, Arkansas at about 5:00 p. m. for Porter, Texas, where our parents live.

We stopped for gas in Nash, Texas, and Connie wet in the pickup. We always ask her to tell us if she needs to potty and this made us upset. I was in the driver's seat with Linda next to me and then Steven and then Connie sitting next to the door. I reached over with my right hand and hit her on the head twice with my open palm.

At between 9:15 and 9:30 p. m. we stopped at Atlanta, Texas, and got some chicken. We pulled into the Wal-Mart parking lot to eat the chicken. Connie and Steven got the food all over the pickup and we spanked both of them. I spanked Connie on the leg and shoulder. Linda also spanked her but I couldn't tell where she hit her.

We were about eight miles south of Jefferson and Connie wet in the pickup again. She hadn't told us that she needed to potty and when we asked her why she did she didn't say anything. I pulled off on the side of the road and I slapped her twice on the side of the head and hit her twice on the leg. Linda spanked her again but I don't know where she hit her.

We were about two miles out of Timpson when Connie grabbed her head and screamed and fell back and bumped her head against the back glass in the truck. I stopped when Linda told me what was happening. I went over to the passenger side, opened the door, grabbed Connie and started patting her back to try to revive her. We tried to give her something to drink and put a wet cloth behind her neck. Linda tried to revive her by blowing into her mouth. Nothing seemed to work so Linda told me to get her to a hospital. I got back in the truck and drove to the hospital in Nacogdoches. While I was driving Linda kept trying to revive her but was unable to.

■ An uncorroborated extrajudicial statement of an accused is insufficient to establish the corpus delicti of a crime. However, if there is some evidence corroborating a confession, the confession may be used in the establishment of the corpus delicti. *White v. State*, 591 S.W.2d 851 (Tex.Cr.App.1979); *Valore v. State*, 545 S.W.2d 477 (Tex.Cr.App.1977); *Batterbee v. State*, 537 S.W.2d 12 (Tex.Cr.App.1976).

■ The question then is whether there was sufficient corroborative evidence which support the content of the statement. Also, it must be remembered that corpus delicti may be proved by circumstances as well as direct evidence. *White v. State*, supra; *Fields v. State*, 468 S.W.2d 71 (Tex.Cr.App. 1971); *Bridges v. State*, 172 Tex.Cr.R. 655, 362 S.W.2d 336 (1962); *Lyles v. State*, 171 Tex.Cr.R. 468, 351 S.W.2d 886 (1961); *Watson v. State*, 154 Tex.Cr.R. 438, 227 S.W.2d 559 (1950).

■ Therefore, a statement or confession may render sufficient circumstantial evidence that would be insufficient without it. *White v. State*, supra; *Watson v. State*, supra; *Pollan v. State*, 157 Tex.Cr.R. 178, 247 S.W.2d 889 (1952).

Here, the statement of appellant states that he hit the child on the side of her head

no less than four times along with other beating incidents. The pathologist testified, without cross examination, unequivocally the cause of death was from blunt force trauma to the head applied with some implement which could have been a hand. We find the evidence sufficient. Appellant's contention is overruled.

■ In his fifth ground of error, appellant contends the trial court erred in failing to instruct the jury in accordance with Defendant's Requested Instruction No. VII. Defendant's requested Instruction No. VII read:

You are instructed that under our law no evidence obtained by a law enforcement officer in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the defendant on the trial of the case where said defendant is charged with having committed a criminal offense. So, in this case, if you find from the evidence, or if you have a reasonable doubt thereof, that the alleged confession or statement of the defendant, if he did make and sign one, was obtained in violation of the provisions of our law, then you will wholly disregard the alleged statement or confession and not consider it for any purpose.

The court instructed the jury as follows:

You are instructed that under our law a confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible in evidence if it appears that the same was freely made without compulsion or persuasion. So, in this case, if you find from the evidence, or if you have a reasonable doubt thereof, that prior to the signing of the alleged confession of the defendant, if any:

(1) the officers having him in charge questioned him persistently over a prolonged period of time without allowing him sufficient sleep, or food, or drink;

(2) the officers having him in charge questioned him persistently over a prolonged period of time without allowing him to contact his family, an attorney, or any other relative and without taking him before a magistrate without unnecessary delay;

or in any manner coerced the defendant or used any improper influence on the defendant, and the defendant, through fear or under duress or under any other improper influence was thereby induced to sign said statement, then such statement would not be freely made and voluntary, and in such case, you will wholly disregard the alleged confession or statement and not consider it for any purpose nor any evidence obtained as a result thereof.

We find no merit in this ground of error.

■ In his last point of error, appellant contends that the trial court erred in instructing the jury on venue over his objection to the charge. The court's charge contained the following instruction:

Venue is the county where the prosecution of a criminal offense is begun and tried. The venue of the criminal offense of injury to a child is the county where the offense occurred. However, if an offense has been committed within the state and it cannot readily be determined within which county or counties the commission took place, trial may be held in the county in which the defendant is apprehended. Offenses committed wholly or in part outside this state, under circumstances that give this state jurisdiction to prosecute the offender, may be prosecuted in any county in which the offender is found or in any county in which an element of the offense occurs. This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if either the conduct or a result that is an element of the offense occurs inside this state.

In any criminal offense the indictment may allege that the offense was committed in the county where the prosecution is carried on.

We find Articles 13.01, 13.17 and 13.19 of the Texas Code of Criminal Procedure control this matter and that the court's charge is correct. The ground of error is overruled.

The judgment is affirmed.