TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00579-CR






David Dunkin Ludwick, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 98-2161, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING






 A jury found appellant David Dunkin Ludwick guilty of capital murder and
sentenced him to life in prison. See Tex. Penal Code Ann. § 19.03(a)(2) (West 1994). Appellant
contends the district court erred in admitting several of the State's exhibits which he contends
were unfairly prejudicial and needlessly repetitive. We will affirm appellant's conviction.


Background

 Appellant and his two accomplices were living in Austin in January 1998. They
discussed moving to Los Angeles and decided to rob someone in order to fund their move. On
January 17, 1998, appellant and his accomplices met John Cavness, Jr., the decedent, at an Austin
bar. After drinking and socializing with Cavness at the bar, they accompanied him to his home
and then killed him and stole several items from his house. They cut Cavness's throat and hit him
in the head with a hammer multiple times.

 Austin Police Officer George Ewing was the first officer to respond to the crime
scene. He testified about the condition of the house, the location of Cavness's body in the house,
and the procedure used in securing the crime scene. During Officer Ewing's testimony, the State
introduced numerous photographic exhibits showing the crime scene as it appeared on January 19. 
Appellant objected to exhibits 23, 25, 26, and 32, arguing their potential for prejudice outweighed
any probative value. The district court overruled his objections.

 Dr. Elizabeth Peacock, a deputy medical examiner for Travis County, performed
the autopsy. She testified it appeared Cavness had been hit at least ten times in the head and face
by a hammer and a blunt object, such as a fist. Cavness also suffered six deep cuts to his neck,
which severed the carotid arteries on his left side, and defensive wounds on his left hand from
apparent attempts to fend off the knife. The blows to Cavness's head fractured his skull, drove
bone fragments into his brain, and tore and bruised his brain. Either the blunt-trauma injuries to
Cavness's head or the injuries to his neck would have killed him. 

 Appellant objected at trial to every autopsy photograph showing head or neck
wounds, stating, "The only objection I have to the rest of them, all of them in general are that
they are so photographic and so strong that I think . . . the prejudicial value outweighs any
probative value since Dr. Peacock has already testified to what damage was done and they have
already seen the photos at the scene of his head and his neck being slashed." The only autopsy
photographs to which appellant did not object show wounds on Cavness's hands. The district
court sustained appellant's objections to five exhibits and overruled his objections to the remaining
exhibits.

 In two issues, appellant claims the district court erred in admitting exhibits 23
through 26, 32 , 51, 52, 54 through 62, 75, and 76 because they were repetitive and gruesome
and their prejudicial effect outweighed any probative value they might have had. (1) We disagree.


Standard of review

 We will not disturb a trial court's ruling on the admissibility of evidence unless we
find an abuse of discretion, that is, the court's decision "falls outside the zone of reasonable
disagreement." Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996); see Santellan v.
State, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997); Poole v. State, 974 S.W.2d 892, 897 (Tex.
App.--Austin 1998, no pet.). Relevant evidence is admissible unless otherwise barred by
Constitution, statute, or rule. See Tex. R. Evid. 401, 402. Relevant evidence may be excluded
if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading the jury, or by considerations of undue delay, or needless presentation
of cumulative evidence." Tex. R. Evid. 403. 

 When a defendant objects to evidence under rule 403, the trial court must weigh
the evidence's probative value against any danger of unfair prejudice. See Santellan, 939 S.W.2d
at 169; Poole, 974 S.W.2d at 897. Relevant evidence carries a presumption that it is more
probative than prejudicial; only when the probative value is substantially outweighed by the
potential for unfair prejudice should the evidence be excluded. See Santellan, 939 S.W.2d at 169;
Poole, 974 S.W.2d at 897. Some factors to be considered when weighing probative value against
prejudice are the number of exhibits, the level of detail or gruesomeness, the size of the
photographs, whether they are black-and-white or color, whether they are close-ups, whether the
body is naked or clothed, and the availability of other proof. See Santellan, 939 S.W.2d at 172. 
Simply because a photograph is disturbing due to the injuries inflicted upon the victim does not
mean the photograph should automatically be excluded as unfairly prejudicial. See Williams v.
State, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997); Santellan, 939 S.W.2d at 173; Sonnier v.
State, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). Generally, if testimony describing the
subject of a photograph is admissible, the photograph is also admissible. (2) See Williams, 958
S.W.2d at 195; Dusek v. State, 978 S.W.2d 129, 136 (Tex. App.--Austin 1998, pet. ref'd). 

 Photographs taken during an autopsy generally are admissible, unless they show
mutilation to the victim's body due to the autopsy itself. See Rojas v. State, 986 S.W.2d 241, 249
(Tex. Crim. App. 1998); Santellan, 939 S.W.2d at 172. Even post-autopsy photographs showing
injuries from an autopsy may be admissible if they do not emphasize the autopsy injuries and if
the autopsy injuries do not obfuscate the results of the crime. See, e.g., Harris v. State, 661
S.W.2d 106, 108 (Tex. Crim. App. 1983) (photographs of skull with skin pulled back admissible;
showed actual injuries to skull and illustrated and clarified doctor's testimony); Terry v. State, 491
S.W.2d 161, 164 (Tex. Crim. App. 1973) (autopsy photographs emphasized autopsy injuries and
those injuries not explained; therefore inadmissible); Griffin v. State, 198 S.W.2d 587, 589-90
(Tex. Crim. App. 1946) (photographs of brain with skull removed admissible); Todd v. State, 911
S.W.2d 807, 820 (Tex. App.--El Paso 1995, no pet.) (photograph of brain admissible; showed
fatal injuries and was clinical, textbook-type photograph); Ladner v. State, 868 S.W.2d 417, 427
(Tex. App.--Tyler 1993, pet. ref'd) (photographs of brain admissible; illustrated testimony by
showing injuries, bruising, and number of blows); Sandow v. State, 787 S.W.2d 588, 597-98
(Tex. App.--Austin 1990, pet. ref'd) (photographs of victim's brain illustrated testimony; witness
distinguished between injuries caused by crime and autopsy injuries); Whitley v. State, 635
S.W.2d 791, 794 (Tex. App.--Tyler 1982, no pet.) (photographs of inside of skull admissible;
corroborated testimony as to cause of death).


Probative value

 Appellant argues exhibits 23, 25, 26, 32, 51, 52, 54 through 62, 75, and 76 had
extremely limited or no probative value at trial because he did not dispute Cavness's cause of
death or the fact that a murder occurred. Appellant argues that because the State did not seek the
death penalty, resulting in an automatic life sentence for his capital murder conviction, "the
viciousness of the death-inducing blows was also irrelevant to the issue of punishment." We
disagree.

 While appellant did not contest the cause of death, the State was still obligated to
prove, as it alleged in the indictment, that appellant intentionally caused Cavness's death "by
cutting [Cavness] with a knife, a deadly weapon, and by striking [him] with a hammer, a deadly
weapon." See Shavers v. State, 881 S.W.2d 67, 76 (Tex. App.--Dallas 1994, no pet.). Further,
the Court of Criminal Appeals has rejected the argument that, because photographs corroborate
uncontested testimony, they have slight probative value that is outweighed by their prejudicial
nature. See Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999); see also
Wilkerson v. State, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987) ("the State's right to introduce
evidence is not restricted by . . . [defendant's] admission of facts sought to be proved"); Sandow,
787 S.W.2d at 598 (even if cause of death not an issue, injuries relevant to identity of assailant).

 Further, the exhibits visually illustrated the testimony given by the State's
witnesses. See Williams, 958 S.W.2d at 195; Dusek, 978 S.W.2d at 136. Ewing testified to the
appearance of the crime scene on January 19. He explained that exhibits 23, 25, and 26 showed
Cavness's body as it lay in the kitchen, and exhibit 32 showed blood on the wall behind the body. 
He testified the photographs accurately showed the crime scene and noted that exhibit 25 showed
Cavness's pocket pulled inside out. Ewing was asked to indicate on a diagram where and how
the body was positioned as reflected by the photographs. The crime scene specialist also utilized
exhibits 24 and 32 during his testimony relating to fingerprints and blood spatters found at the
scene. Dr. Peacock stated the autopsy photographs would be helpful to her testimony and used
them to explain and illustrate the extent, location, and types of injuries Cavness suffered. 

 The photographs helped identify Cavness and the kinds of weapons used to kill
him, essential elements of the State's case. See Shavers, 881 S.W.2d at 76. The crime scene
photographs illustrated testimony by Cavness's sisters and the police investigating the crime, and
the autopsy photographs illustrated Dr. Peacock's scientific testimony. See Tex. R. Evid. 401;
Long v. State, 823 S.W.2d 259, 273-74 (Tex. Crim. App. 1991). The photographs had probative
value, and their admission was proper unless their value was substantially outweighed by potential
for unfair prejudice. See Santellan, 939 S.W.2d at 169; Poole, 974 S.W.2d at 897. 


Did prejudicial potential outweigh probative value? Appellant argues the exhibits were overly gruesome, causing them to have greater
prejudicial effect than probative value. We disagree.


I. Crime scene photographs

 The crime scene photographs are visual depictions of the testimony of the police
officers who responded to and investigated the crime. The testimony describing the crime scene
was relevant and admissible and therefore the photographs were also admissible unless "so
horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty
rationally deciding the critical issues of this case after viewing them." Fuller v. State, 829
S.W.2d 191, 206 (Tex. Crim. App. 1992). While exhibits 23, 25, 26, and 32, which show
Cavness as he lay dead on the kitchen floor in a pool of blood, are disturbing and graphic, they
reflect nothing more than the gruesome nature of the crime committed. See Chamberlain, 998
S.W.2d at 237; Emery, 881 S.W.2d at 710-11; see also Sonnier, 913 S.W.2d at 519 (photos,
while gruesome, are powerful visual evidence); Matamoros v. State, 901 S.W.2d 470, 476 (Tex.
Crim. App. 1995) (photos aided jury's understanding of crime scene). The photographs do not
appear to be enhanced or overly enlarged, are not extreme close-ups, and only six of the thirty-two crime scene photographs, including the four to which appellant objected, show any part of
Cavness's clothed body. See Santellan, 939 S.W.2d at 172. We cannot hold the trial court
abused its discretion in admitting the photographs when appellant has not shown the crime scene
photographs were so horrifying and prejudicial as to substantially outweigh their probative value. 
See Santellan, 939 S.W.2d at 169; Fuller, 829 S.W.2d at 206. We overrule appellant's first issue
on appeal.


II. Autopsy Photographs

 The autopsy photographs accompanied Dr. Peacock's testimony describing
Cavness's wounds and cause of death. Exhibit 51, taken from the right side of Cavness's head
and torso, shows circular wounds on his temple and cutting wounds to his neck. Exhibit 52 is a
close-up photograph of Cavness's face and head; wounds to both temples and his mouth are
visible. Exhibits 54 and 55 show shaved areas of Cavness's skull where he suffered lacerations. 
Exhibit 56 is a close-up of circular injuries on the right side of his face, and exhibits 57 and 59
are close-up photographs of circular injuries on his left temple area. Exhibit 58 is a photograph
of the left side of Cavness's head and neck, and shows circular injuries on his head and wounds
on his neck. Exhibit 60 shows injuries behind his left ear and on the left side of his head. Exhibit
61 depicts injuries to the inside of Cavness's mouth and exhibit 62 shows severe wounds to his
neck. In exhibits 75 and 76, Cavness's skull is removed to reveal injuries to his brain.

 With the exception of exhibits 75 and 76, none of the autopsy photographs show
injuries caused by the autopsy. See Rojas, 986 S.W.2d at 249; Santellan, 939 S.W.2d at 172. 
The injuries depicted are gruesome and disturbing but, as in the case of the crime scene
photographs, no more so than the crime committed. See Chamberlain, 998 S.W.2d at 237;
Emery, 881 S.W.2d at 710-11. The wounds are cleansed of blood, and the photographs reflect
true, non-enhanced depictions of the inflicted injuries. As for exhibits 75 and 76, they are
disturbing in that they show Cavness's brain with the skull removed as a result of the autopsy. 
However, they illustrate Dr. Peacock's testimony about the bruises, cuts, and other injuries caused
to the brain by the blunt-trauma inflicted on the skull, accurately portray the brain injuries, and
show only the brain, not the entire head with portions of the skull removed. See Harris, 661
S.W.2d at 108; Griffin, 198 S.W.2d at 589-90; Todd, 911 S.W.2d at 820; Ladner, 868 S.W.2d
at 427; Sandow, 787 S.W.2d at 598.

 Reviewing the district court's admission of the autopsy photographs, we are unable
to say the trial court abused its discretion by admitting them into evidence. See Rojas, 986
S.W.2d at 249-50. We overrule appellant's second issue on appeal.


Were the Photographs Needlessly Cumulative?


 Appellant also argues the photographic exhibits were unnecessarily cumulative. 
However, at trial he did not object to exhibits 23, 25, 26, and 32 on the basis that those exhibits
were cumulative or repetitive, only that they were prejudicial. He did object to exhibits 51 and
56 as repetitive of one another, 57 and 58 as repetitive of one another, and 75 and 76 as showing
injuries illustrated in other photographs. We will examine only those six exhibits which appellant
specifically complained were cumulative. See Santellan, 939 S.W.2d at 171.

 Exhibit 51 shows the right side of Cavness's body from his waist up. Exhibit 56
is a close-up view of the right side of Cavness's head. While taken from the same angle and
showing some of the same injuries, exhibit 51 also shows Cavness's neck injuries and exhibit 56
more clearly reflects the circular injuries on Cavness's right temple. They are not so similar to
one another as to make their admission an abuse of discretion.

 Exhibit 57 is an extreme close-up of the top left side of Cavness's head, and exhibit
58 shows the entire left side of Cavness's head, face, and neck. On both exhibits, Dr. Peacock
placed numbered tags next to the head wounds so that the jury could understand which injuries
she was describing; wound 6 is particularly vicious. Exhibit 58 reveals the deep wound to the left
side of Cavness's neck and damage to the left side of his mouth. Exhibit 57 shows wounds 6 and
8 in detail while exhibit 58 shows wounds 6 through 9 at more of a distance. Exhibits 57 and 58
are not so similar to one another as to make their admission an abuse of discretion.

 Finally, exhibits 75 and 76 both show Cavness's brain injuries and show his brain
with the skull removed. None of the other photographs show the actual injuries done to the brain. 
Exhibits 75 and 76 show different views and are not so similar to one another as to make their
admission an abuse of discretion, nor are they so similar to other photographs as to render them
cumulative of other exhibits.

 The district court did not err in overruling appellant's objections that exhibits 51,
56, 57, 58, 75, and 76 were cumulative.


Conclusion

 Having held the district court did not err in finding the photographs had probative
value that was not substantially outweighed by any prejudicial effect and having held the
photographs were not needlessly cumulative, we overrule appellant's issues on appeal. We affirm
the district court's judgment.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Smith

Affirmed

Filed: May 18, 2000

Do Not Publish

1. Appellant did not object at trial to exhibit 24. When exhibits 9 through 41 were offered,
appellant stated, "A number of photographs, 13, 23, 25, 26, 32, those, your Honor, show -- depict
various scenes of great amount of blood and open wounds, and I think that they are such that just
the viewing of them could prejudice the jury, so we would ask that the Court exclude those based
on the prejudicial value." In overruling appellant's objection, the district court stated, "Let the
record reflect that State's Exhibits 13, 23, 24, 25, 26, and 32, with one exception are photos of
the deceased, 32 is not a photo -- well, there is a portion of his face in that photo. The objection
is overruled." Appellant's complaint on appeal as to exhibit 24 does not comport with an
objection made at trial. See Tex. R. App. P. 33.1(a); Santellan v. State, 939 S.W.2d 155, 171
(Tex. Crim. App. 1997). Absent any objection, any error as to exhibit 24's admission is not
preserved. We overrule his issue as it applies to exhibit 24. 
2. Appellant claims the proposition that photographic depictions of admissible verbal testimony
are admissible is a "pre-Rules adage [that] is not consistent with the required balancing test under
Rule 403." Appellant is correct that, once a defendant makes a rule 403 objection, the trial court
must weigh the exhibit's probative value against its risk of unfair prejudice. See Montgomery v.
State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990); Poole, 974 S.W.2d at 897. However, the
Court of Criminal Appeals continues to affirm the validity of the general rule that "photographs
[are] admissible if verbal testimony as to matters depicted in the photographs is also admissible
. . . [a]n abuse of discretion arises only when the probative value of the photograph is small and
its inflammatory potential great." Ramirez v. State, 815 S.W.2d 636, 647 (Tex. Crim. App.
1991) (citation omitted); see Williams, 958 S.W.2d at 195; Emery v. State, 881 S.W.2d 702, 710
(Tex. Crim. App. 1994) (quoting Hernandez v. State, 819 S.W.2d 806, 819 (Tex. Crim. App.
1991)).


clearly reflects the circular injuries on Cavness's right temple. They are not so similar to
one another as to make their admission an abuse of discretion.

 Exhibit 57 is an extreme close-up of the top left side of Cavness's head, and exhibit
58 shows the entire left side of Cavness's head, face, and neck. On both exhibits, Dr. Peacock
placed numbered tags next to the head wounds so that the jury could understand which injuries
she was describing; wound 6 is particularly vicious. Exhibit 58 reveals the deep wound to the left
side of Cavness's neck and damage to the left side of his mouth. Exhibit 57 shows wounds 6 and
8 in detail